IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

WALTER ANSLEY, et al.,
*Plaintiffs/Appellees/Cross-Appellants*,

*v.*

BANNER HEALTH NETWORK, et al.,
*Defendants/Appellants/Cross-Appellees*.

No. 1 CA-CV 17-0075
FILED 3-12-2019

Appeal from the Superior Court in Maricopa County
No.  CV2012-007665
The Honorable J. Richard Gama, Judge, *Retired*
The Honorable Dawn M. Bergin, Judge

**AFFIRMED IN PART; REVERSED IN PART; REMANDED**

COUNSEL

Levenbaum Trachtenberg, PLC, Phoenix
By Geoffrey M. Trachtenberg, Justin Henry
*Co-Counsel for Plaintiffs/Appellees/Cross-Appellants*

The Entrekin Law Firm, Phoenix
By B. Lance Entrekin
*Co-Counsel for Plaintiffs/Appellees/Cross-Appellants*

Gammage & Burnham, PLC, Phoenix
By Richard B. Burnham, Cameron C. Artigue, Christopher L. Hering
*Counsel for Defendants/Appellants/Cross-Appellees*

---

**OPINION**

---

Presiding Judge Diane M. Johnsen delivered the opinion of the Court, in which Judge Kent E. Cattani and Judge Jennifer M. Perkins joined.

---

J O H N S E N, Judge:

¶1          Banner Health Network and other hospital groups ("the Hospitals") each contracted with the Arizona Health Care Cost Containment System ("AHCCCS") to serve AHCCCS members.  The plaintiffs in this case ("the Patients") received settlements or damage awards from third-party tortfeasors for injuries that required treatment at the Hospitals.  The Patients sued to enjoin the Hospitals from enforcing liens on their tort recoveries for the balance between the rates the Hospitals agreed to accept from AHCCCS and what the Hospitals would have charged non-AHCCCS patients.  We hold that federal law preempts state statutes authorizing the Hospitals to impose and enforce those liens, and affirm the superior court's order enjoining the liens.  For reasons set forth below, we also reverse the court's judgment against the Patients on their third-party-beneficiary claim for breach of contract and vacate and remand for further consideration a portion of the attorney's fee award to the Patients.

## FACTS AND PROCEDURAL HISTORY

¶2          The Hospitals recorded their liens pursuant to two statutes, Arizona Revised Statutes ("A.R.S.") sections 33-931 (2019) and 36-2903.01(G)(4) (2019).[1]  The former allows a health-care provider to file a lien for its "customary" charges against a patient's tort recovery.  The latter specifically applies when a hospital has served an AHCCCS member and allows that hospital to "collect any unpaid portion of its bill from other third-party payors or in situations" in which the general medical-lien statute applies.

¶3          In their complaint, the Patients alleged federal Medicaid law preempts the Arizona lien statutes in cases such as theirs, and sought an injunction barring the Hospitals from recording liens on their tort

---

[1]     Absent material revision after the relevant date, we cite a statute's current version.

recoveries. The Patients argued the liens constitute impermissible "balance billing," a term describing a health-care provider's effort to collect from a patient "the difference in the amount paid by Medicaid, or a state plan like AHCCCS, and the amount" the provider typically charges. *Abbott v. Banner Health Network*, 239 Ariz. 409, 412, ¶ 9 (2016).

**¶4** Early in the litigation, the superior court dismissed a group of plaintiffs who had settled their lien claims with the Hospitals and entered partial final judgment as to those plaintiffs pursuant to Arizona Rule of Civil Procedure 54(b). Those plaintiffs appealed, arguing their settlements lacked consideration because federal law preempted the Hospitals' liens. This court accepted that argument, *Abbott v. Banner Health Network*, 236 Ariz. 436, 446, ¶ 30 (App. 2014) ("*Abbott I*"), but the supreme court reversed, *Abbott,* 239 Ariz. 409 (2016) ("*Abbott II*"). The supreme court ruled the settlements were valid and made "fairly and in good faith" because the validity of the Hospitals' lien rights was not settled under Arizona law. *Abbott II*, 239 Ariz. at 413, 414, 415, ¶¶ 12, 18, 20.

**¶5** Meanwhile, the superior court certified the remaining plaintiffs as a class, and both sides moved for summary judgment on the preemption issue. The superior court ruled in favor of the Patients on their claim for a declaratory judgment, holding that when a hospital has accepted payment from AHCCCS for treating a patient, 42 Code of Federal Regulations ("C.F.R.") § 447.15 (2019) preempts the hospital's state-law right to a lien on the patient's tort recovery for the balance between what AHCCCS paid and the hospital's customary charges. The court then enjoined the Hospitals from "filing or asserting any lien or claim against a patient's personal injury recovery, after having received *any* payment from AHCCCS for the same patient's care." The court granted summary judgment to the Hospitals, however, on the Patients' third-party-beneficiary claim, which alleged the Hospitals breached their contracts with AHCCCS by imposing the liens. Finally, the superior court awarded attorney's fees to the Patients under the private attorney general doctrine and denied both sides' motions for new trial.

**¶6** The Hospitals appealed the preemption ruling and injunction, and the Patients cross-appealed the judgment against them on their contract claim. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) (2019) and -2101(A)(1) (2019).

## DISCUSSION

### A. Introduction.

¶7 In our initial opinion in the current appeal, we did not address the superior court's order granting the Patients' claim for a declaratory judgment that federal law preempts the Hospitals' state-law lien rights. We concluded instead that the Patients were entitled to injunctive relief as third-party beneficiaries of the contracts the Hospitals entered with AHCCCS. Those contracts require the Hospitals to comply with applicable federal law. Under that federal law, we held the Hospitals could not enforce liens against the Patients' tort recoveries for the balance between what AHCCCS paid the Hospitals and the Hospitals' customary rates.

¶8 The Hospitals moved for reconsideration, arguing for the first time that under *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011), the Patients could not sue as third-party beneficiaries of the contracts because the federal law on which they based their claim affords no private right of action. The Hospitals' argument under *Astra* requires us to address the issue we deferred in our initial opinion. For that reason, we withdraw that opinion and issue this one in its place.

### B. Federal Law Preempts the Hospitals' Lien Rights.

¶9 Federal law may preempt state law by express preemption, field preemption or conflict preemption. *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 698-99 (1984); *White Mtn. Health Ctr., Inc. v. Maricopa County*, 241 Ariz. 230, 239-40, ¶ 33 (App. 2016).[2] The issue here – conflict preemption – arises when state law stands as an obstacle to the achievement of Congress's full purpose, or when compliance with both federal and state laws is impossible. *Crisp*, 467 U.S. at 699; *White Mtn.*, 241 Ariz. at 240, ¶ 33. A federal regulation has the same preemptive effect as a federal statute. *Crisp*, 467 U.S. at 699. Thus, a federal regulation may render unenforceable

---

[2] The Patients argue this court's decision in *Abbott I*, which concluded that federal law preempts the lien statutes, *see* 236 Ariz. at 442, ¶ 18, is the law of the case. In *Abbott II*, however, our supreme court reversed that decision (albeit on other grounds). *See* 239 Ariz. at 415, ¶ 20. Assuming the law-of-the-case doctrine might otherwise apply, we decline to apply it here. *See Powell-Cerkoney v. TCR-Montana Ranch Joint Venture, II*, 176 Ariz. 275, 278-79 (App. 1993) (court has discretion whether to apply law-of-the-case doctrine in favor of its own prior decision).

a state law that is otherwise consistent with federal law. *City of New York v. F.C.C.*, 486 U.S. 57, 63-64 (1988).

¶10        Medicaid is a "cooperative federal-state program" that pays for health care for the needy and the disabled. *Douglas v. Indep. Living Ctr. of So. Calif.*, 565 U.S. 606, 610 (2012); 42 U.S.C. § 1396-1 (2019). A state that chooses to participate must "comply with the Medicaid Act and its implementing regulations." *Rehabilitation Ass'n of Va., Inc. v. Kozlowski*, 42 F.3d 1444, 1447 (4th Cir. 1994). To receive federal funds under the program, a state must create a detailed plan that, *inter alia*, specifies "the nature and scope" of the medical services it will cover. *Douglas*, 565 U.S. at 610; *see also* 42 U.S.C. § 1396a(a) (2019).[3] The federal Center for Medicare and Medicaid Services ("CMS"), a division of the Department of Health and Human Services ("HHS"), reviews the state's plan to ensure it complies with federal Medicaid statutes and regulations. *See* 42 U.S.C. § 1396a(b) (plan approval by HHS secretary); 42 U.S.C. § 1316(a) (2019) (HHS power to withhold funds if changes to state plan do not comply with federal law); 42 C.F.R. § 430.10 (2019) (describing contents of state plan); s*ee also Spectrum Health Continuing Care Group v. Bowling*, 410 F.3d 304, 313 (6th Cir. 2005) ("state's plan must comply with federal statutory and regulatory standards").

¶11        A fundamental principle of the program is that "Medicaid is essentially a payer of last resort." *Kozlowski*, 42 F.3d at 1447. Toward that end, patients must assign to the state Medicaid agency their rights "to any payment from a third party that has a legal liability to pay for care and services available under the plan." 42 U.S.C. § 1396k(a)(1)(A) (2019); *see* A.R.S. § 36-2946(A) (2019) (patients must assign "all types of medical benefits"); *Olszewski v. Scripps Health*, 30 Cal. 4th 798, 811 (2003). Accordingly, when a hospital submits a claim for treating a plan member, the state Medicaid agency first tries to determine whether a third party (insurer, tortfeasor) may be liable for paying the claim. *Olszewski*, 30 Cal. 4th at 811. When no third party is liable or liability cannot be determined, the state agency pays the hospital its negotiated rate for treating the patient. 42 C.F.R. § 433.139(c). If a third party is implicated, the agency rejects the claim and returns it to the hospital to determine the amount of the third party's liability. 42 C.F.R. § 433.139(b)(1) (2019). In such a case, the agency will pay the hospital only the difference between the rate the agency negotiated with the hospital and what the hospital receives from the third

---

3        A district court has held that portions of the Medicaid Act as amended by the Affordable Care Act are unconstitutional. *Texas v. United States*, 340 F. Supp. 3d 579, 619 (N.D. Tex. 2018). Nothing in that decision is relevant to this opinion.

party. *Id.* If a third party's liability comes to light only after the state agency has paid the hospital's claim, the agency must seek reimbursement for itself from the third party when it is cost effective to do so. 42 C.F.R. § 433.139(d).

¶12 Consistent with these rules aimed at limiting the costs that the state Medicaid agency ultimately bears, Arizona law grants AHCCCS a lien against a patient's recovery from a tortfeasor so that AHCCCS can recover what it has paid to treat the patient. A.R.S. § 36-2915(A) (2019). Moreover, Arizona requires that a hospital that serves an AHCCCS member must seek payment from any liable third party (insurer, worker's compensation carrier, tortfeasor) *before* it bills AHCCCS. *See* AHCCCS, Fee-for-Service Provider Manual at 9-1 (Mar. 2014 rev.) ("AHCCCS has liability for payment of benefits after Medicare and all other first- and third-party payer benefits have been paid. Providers must determine the extent of the first- and third-party coverage . . . prior to billing AHCCCS."); *see also* Arizona Administrative Code ("A.A.C.") R9-22-1005 (requiring providers to identify and notify AHCCCS of potential sources of first- and third-party liability). And if a third party pays the hospital more than AHCCCS's scheduled rate, the hospital is not entitled to additional payment from AHCCCS. A.A.C. R9-22-1003 (AHCCCS pays no more than the difference between the scheduled rate "and the amount of the third-party liability"); AHCCCS, Fee-for-Service Provider Manual at 9-2 (Mar. 2014 rev.).

¶13 Under all these authorities, there is no dispute that if a tortfeasor's liability becomes apparent after AHCCCS has paid a hospital, AHCCCS may demand reimbursement from the tortfeasor. *See* 42 U.S.C. § 1396a(a)(25)(B). The issue here is whether federal law allows a hospital that has accepted payment from AHCCCS to enforce a state-law lien against a patient's tort recovery to obtain more for itself than what it agreed to accept from AHCCCS for treating the patient.

¶14 The Hospitals' liens are based on two Arizona statutes. As relevant here, A.R.S. § 33-931(A) states that a provider

> is entitled to a lien for the care and treatment or transportation of an injured person. The lien shall be for the claimant's customary charges for care and treatment [and] extends to all claims of liability or indemnity, except health insurance and underinsured and uninsured motorist coverage . . . , for damages accruing to the person to whom the services are rendered . . . on account of the injuries that gave rise to the claims and that required the services.

6

The other statute specifically applies to hospitals that serve AHCCCS members and states:

> Payment received by a hospital from [AHCCCS] . . . is considered payment by [AHCCCS] of [AHCCCS's] liability for the hospital bill. A hospital may collect any unpaid portion of its bill from other third-party payors or in situations covered by [A.R.S. § 33-931].

A.R.S. § 36-2903.01(G)(4).

¶15        The Patients argue the Hospitals' liens are invalid under 42 C.F.R. § 447.15, a federal regulation issued in 1980. *See* 45 Fed. Reg. 24889 (Apr. 11, 1980). Federal regulations dictate the relationship between a state Medicaid agency and the hospitals with which it contracts. As applicable here, § 447.15 mandates that a state may contract only with providers that agree to "accept, as payment in full, the amounts paid by the agency plus any deductible, coinsurance or copayment required by the plan to be paid by the individual." The Hospitals do not dispute that this regulation bars a hospital that has contracted with AHCCCS from billing a patient for the balance between what AHCCCS has paid and the hospital's customary rates. We hold the regulation likewise bars a hospital from imposing a lien on the patient's tort recovery for that balance.

¶16        A lien is a means of securing a debt; without a debt, there can be no lien. *See Matlow v. Matlow*, 89 Ariz. 293, 298 (1961) ("In the absence of an obligation to be secured there can be no lien."). Once a hospital has accepted payment from AHCCCS for treating a patient, the patient owes the hospital nothing beyond a "deductible, coinsurance or copayment." 42 C.F.R. § 447.15. Because the patient does not owe the hospital the balance between what AHCCCS has paid the hospital and the hospital's customary rate, the hospital may not collect that balance by imposing a lien on the patient's property. The patient's property includes his or her recovery from the tortfeasor that caused the injuries requiring treatment. *See Samsel v. Allstate Ins. Co.*, 204 Ariz. 1, 7, ¶ 21 (2002) (noting insured patient's "property interest in his or her tort claim and eventual recovery"); *Bowling*, 410 F.3d at 317 (once judgment is entered against a tortfeasor or tortfeasor agrees to a settlement, "proceeds are no longer the property of the tortfeasor," but belong to the patient.) Just as the hospital may not seize a patient's car or impose a lien against the patient's home, the hospital likewise may not use state lien laws to seize the patient's tort recovery.

¶17　　　　Although this is an issue of first impression in Arizona, each court addressing the issue elsewhere has come to the same conclusion. *See Bowling*, 410 F.3d at 315 ("By accepting the Medicaid payment, the service provider accepts the terms of the contract – specifically that the Medicaid amount is *payment in full*."); *Taylor v. Louisiana ex rel. Dep't of Health & Hosps.*, 7 F. Supp. 3d 641, 644 (M.D. La. 2013) ("Congress did not intend for providers to receive Medicaid reimbursement for patient care and then intercept funds that the patient would otherwise receive."); *Lizer v. Eagle Air Med. Corp.*, 308 F. Supp. 2d 1006, 1009-10 (D. Ariz. 2004) (§ 447.15 preempts right of provider that has accepted payment from AHCCCS to assert lien against patient's tort recovery under A.R.S. § 33-931); *Mallo v. Pub. Health Trust of Dade County, Fla.*, 88 F. Supp. 2d 1376, 1387 (S.D. Fla. 2000) (provider may not balance bill by imposing lien on patient's tort settlement; "health care providers are not entitled to prey on an otherwise poor patient's change in economic status"); *Olszewski*, 30 Cal. 4th at 820 (Medicaid statutes and regulations "are unambiguous and limit provider collections from a Medicaid beneficiary to, at most, the cost-sharing charges allowed under the state plan, even when a third party tortfeasor is later found liable for the injuries suffered by that beneficiary"); *Pub. Health Trust of Dade County, Fla. v. Dade County Sch. Bd.*, 693 So. 2d 562, 566-67 (Fla. Dist. Ct. App. 1996) (Medicaid preempts Florida regulation allowing provider to balance bill by imposing lien on patient's tort settlement).[4]

¶18　　　　The Hospitals argue that "payment in full" under § 447.15 only limits a provider's right to payment from the state Medicaid agency or the patient and does not prevent them from intercepting the balance from a third-party tortfeasor. As stated, however, that interpretation is contrary to Arizona law, under which a patient has a property interest in his or her tort recovery. *See Samsel*, 204 Ariz. at 7, ¶ 21.

¶19　　　　The Hospitals contend that "Congress has never articulated a federal interest in protecting the tort recoveries of Medicaid beneficiaries, and has acted as if the reverse were true." In support, they point to the

---

[4]　　*See also Evanston Hosp. v. Hauck*, 1 F.3d 540, 543-44 (7th Cir. 1993) (hospital could not return payment to state Medicaid agency and then assert lien against patient who won a tort judgment; hospital's claim would turn Medicaid "upside down by converting the system into an insurance program for hospitals rather than for indigent patients"); *Smallwood v. Cent. Peninsula Gen. Hosp.*, 151 P.3d 319, 326 (Alaska 2006) ("Medicaid recipients are the intended beneficiaries of the prohibition on balance billing. That intent is evident from the state and federal Medicaid statutes and regulations and from the terms of the provider agreement.").

authorities discussed above that allow state Medicaid agencies to collect from tortfeasors that have injured plan members. *E.g.*, 42 U.S.C. § 1396a(a)(25)(H), -(45). But a Medicaid agency may use a lien only to collect the amount it paid (and the hospital agreed to accept) for treating the patient. By contrast, at issue here is whether a hospital may impose a lien to collect sums beyond what it agreed to accept for treating the Medicaid patient. The Hospitals cite no federal authority to support their contention that Congress intended that a provider that chooses to treat a Medicaid member may balance bill by intercepting that member's tort recovery. Indeed, the Patients cite a 1967 Senate Report that stated, "As a matter of public policy, it would be best for all concerned . . . if the reimbursement made by the State" constituted a provider's entire compensation. S. Rep. No. 744, at 187-88 (1967); *see also Lizer*, 308 F. Supp. 2d at 1009 (§ 447.15 prevents "providers from intercepting funds on the way to a patient."); *Briarcliff Haven, Inc. v. Dep't of Human Resources of State of Ga.*, 403 F. Supp. 1355, 1363 (N.D. Ga. 1975) ("The [M]edicaid program is not designed to protect providers from the consequences of their business decisions or from business risks.").

**¶20**        The Hospitals also point to two HHS documents they claim are inconsistent with our analysis. The first document is a response by the Health Care Financing Administration to a comment submitted on a draft of a related regulation issued in 1990. *See* 55 Fed. Reg. 1423-02, at 1428 (Jan. 16, 1990) (codified at 42 C.F.R. § 447.20). The new regulation required state plans to limit what a provider could collect from a patient "or any financially responsible relative or representative" of the patient when a third party is liable for payment. The comment expressed concern that by limiting what a provider could collect "from a representative" of a patient, the regulation would bar a provider from collecting from a patient's insurer or other "resources available to the" patient. *Id.*; *see also* 42 C.F.R. § 447.20(a) (2019). In response, the agency explained that "[t]he intent of this provision is to protect the Medicaid recipient from being charged for a service in excess of the amounts allowed under the State plan after considering the third party's liability." *Id.* The Hospitals point to the agency's further comment that "[t]he provider is not restricted from receiving amounts from third party resources available to the recipient (or his or her legal representative.")." *Id.* But that statement was referring to a provider's right to seek payment from a third party *before* accepting payment from the state agency, not after. The agency referenced 42 C.F.R. § 433.139(b)(1), under which a state Medicaid agency may pay a provider only "to the extent that payment allowed under the agency's payment schedule exceeds the amount of the third party's payment."

**¶21** The second HHS document the Hospitals cite is a 1997 letter from the Acting Director of the Health Care Financing Administration. According to the Hospitals, the letter construed § 447.15 to permit a provider that has treated a Medicaid patient to return the state agency's payment and seek its customary rates from the patient's tort recovery. But the letter does not constitute formal agency policy or even guidance. *See Bowling*, 410 F.3d at 318 (referenced letter "is neither listed on the [agency] website . . . nor published elsewhere").

**¶22** As applied to the Patients and the Hospitals in this case, A.R.S. §§ 33-931(A) and 36-2903.01(G)(4) purport to allow a hospital that has accepted payment from AHCCCS to impose a lien on the patient's claim against a tortfeasor for the injuries that required the treatment for which AHCCCS paid the hospital. But under 42 C.F.R. § 447.15, the Supremacy Clause of the United States Constitution and the authorities cited above, these statutes are invalid to the extent they allow a hospital to impose a lien on a patient's tort recovery for the balance between what the hospital accepted from AHCCCS for treating the patient and what it might have charged another patient.

**¶23** The Hospitals argue that when CMS, the division of HHS that oversees Medicaid, approved Arizona's AHCCCS plan, it impliedly approved the two Arizona lien statutes and the rights they grant providers to intercept patients' tort recoveries. But the Hospitals cite nothing in the record, the AHCCCS plan or the law to support the premise that in approving Arizona's plan, CMS had the authority to review – or actually did review – any state statutes that might bear in some way on AHCCCS. Contrary to the Hospitals' contention, CMS determines only whether the plan a state submits conforms with the Medicaid Act and related federal regulations; Congress has not granted CMS authority to determine the validity of state law. *See* 42 C.F.R. § 430.14 (2019); *see also* 42 C.F.R. §§ 430.10, 430.15. Further, nothing in our record supports the proposition that Arizona's state plan includes or incorporates the two lien statutes at issue. The cases the Hospitals cite do not hold otherwise. *See Cmty. Health Care Ass'n of N.Y. v. Shah*, 770 F.3d 129, 144 (2d Cir. 2014) (CMS reviewed provider payment schedules "as amendments to the state plan"); *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 596 (5th Cir. 2004) (CMS's "review and determination definitively indicate whether it interprets a *state plan or amendment* to be in conformity with the [federal] statute.") (emphasis added); *Pharm. Research & Mfrs. of Am. v. Thompson*, 362 F.3d 817, 821-22 (D.C. Cir. 2004) (review of state plan).

¶24          In their motion for reconsideration, the Hospitals assert that *Douglas*, 565 U.S. at 614, teaches that CMS reviews state statutes when it approves a state's Medicaid plan, and that CMS will not approve a plan without approving the statutes. At issue in *Douglas*, however, were three statutes California enacted to change payment provisions in its state Medicaid plan – the Supreme Court even described the measures as "statutory amendments to its plan." *Id.* at 613. In the absence of any other authority, we do not read *Douglas* to stand for the proposition that CMS reviews any and all state statutes that might bear on patients' and providers' rights when it approves a state's Medicaid plan. *See Olszewski*, 30 Cal. 4th at 825.

¶25          The Hospitals similarly argue the AHCCCS plan allows providers to use liens to balance bill. But the Arizona plan does not address balance billing, let alone endorse it. For their contention to the contrary, the Hospitals rely on a brief portion of "Attachment 4.19-A," a 66-page section of the AHCCCS plan titled "Methods and Standards for Establishing Payment Rates [for] Inpatient Hospital Care." In the definitions section, Attachment 4.19-A provides as follows:

> Prospective rates are inpatient hospital rates defined in advance of a payment period and represent payment in full for covered services excluding any quick-pay discounts, slow pay penalties, and third party payments regardless of billed charges or individual hospital costs.

The Hospitals contend this language means that after a hospital has accepted "payment in full" from AHCCCS for treating a patient, it may impose a lien on the patient's tort recovery as a permissible "third party payment."

¶26          But the brief reference in Attachment 4.19 to "third party payments" in a section of the plan specifying the rates AHCCCS will pay hospitals does not constitute an endorsement of a hospital's right to accept payment from AHCCCS, then impose a lien on the patient's tort recovery for more. The word "lien" is not even used. As set out in ¶ 11, *supra*, because AHCCCS is the "payer of last resort," a hospital must determine whether a third party may be liable for the cost of treatment before the hospital bills AHCCCS. If the hospital ascertains that a third party is liable, it may bill AHCCCS only for the difference between what it has recovered from the third party and the AHCCCS scheduled rate. Against that backdrop, the reference to "third party payment" in Attachment 4.19-A refers to a

11

payment made *before* the hospital accepts payment from AHCCCS, not after.

¶27 The Hospitals also point to A.A.C. R9-22-1007 as support for their contention that Arizona's AHCCCS plan allows balance billing. The cited regulation is titled "Notification for Perfection, Recording, and Assignment of AHCCCS Liens." It requires that when a hospital has treated an AHCCCS member for an injury "reflecting the probable liability of a first- or third-party," the hospital must, within 30 days of discharging the patient, notify AHCCCS "under R9-22-1008" or mail the agency "a copy of the lien the hospital proposes to record or has recorded under A.R.S. § 33-932." A.A.C. R9-22-1007. The Hospitals argue the regulation effectively acknowledges a hospital's right to record a lien against a patient's tort recovery after accepting payment from AHCCCS. But read in context with A.A.C. R9-22-1008, which requires providers to notify AHCCCS of the "[a]mount estimated to be due for care of member," it is clear that R9-22-1007 concerns a lien the hospital would record *before* AHCCCS determines what to pay the hospital, not after. *See* ¶¶ 11-12, *supra*.

¶28 The Hospitals' argument that the AHCCCS plan permits them to use liens to balance bill patients also disregards the mandate in A.A.C. R9-22-702(B), under which a provider "must accept payment from [AHCCCS] or a contractor as payment in full." Beyond repeating the requirement prescribed by 42 C.F.R. § 447.15, the Arizona regulation goes on to specifically limit the circumstances under which a provider may demand payment from a patient. *See* A.A.C. R9-22-702(C), (D). As relevant here, the regulation allows a provider to pursue a patient only (1) to collect a copayment and (2) to collect "that portion of a payment made [to the patient] by a third party" that is subject to the patient's "statutory assignment of rights to AHCCCS." A.A.C. R9-22-702(D); *see also* A.R.S. §§ 36-2946(A) (patient's assignment of medical benefits), -2915(A) (AHCCCS lien on patient's tort claim). In other words, the only specified circumstance in which a hospital may demand that a patient turn over a tort recovery is when the proceeds are subject to an assignment or lien in favor *of AHCCCS*. There is no corresponding provision in the regulation allowing a hospital to compel a patient to relinquish a tort recovery to satisfy the *hospital's* lien rights.

¶29 In short, the provisions the Hospitals cite in the Arizona plan are part and parcel of a provider's duty under the plan to "cost avoid" before it bills AHCCCS, not a license to accept payment from AHCCCS, then enforce a lien against the patient's tort recovery for the balance between that payment and what the provider would have charged another patient.

Accordingly, we hold that when CMS approved the AHCCCS plan, it did not authorize providers to accept payment from AHCCCS, then enforce liens against patients' recoveries from tortfeasors.

¶30        In their motion for reconsideration, the Hospitals cite *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1479 (2018), in arguing 42 C.F.R. § 447.15 cannot preempt Arizona's lien statutes because it does not "regulate[] private actors."  At issue in *Murphy* was a 1992 federal statute making it unlawful for a state to promote or authorize sports gambling.  *See* 28 U.S.C. § 3702(2)(1).  The Court ruled the statute could not be upheld as "a valid preemption provision" because it purported to regulate activity by the states, not by individuals.  138 S. Ct. at 1481 (statute did not "impose any federal restrictions on private actors").

¶31        The Hospitals contend that, like the gambling statute in *Murphy*, the Medicaid Act and 42 C.F.R. § 447.15 regulate states, not private actors.  But the *Murphy* court cited with approval *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992), under which the "private actor" requirement would not exempt the Hospitals' lien rights from preemption. In *Morales*, the Court addressed the Airline Deregulation Act of 1978, which simultaneously lifted existing federal regulation of airlines and forbade states from "enact[ing] or enforc[ing] any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services" of any airline carrier covered by the act.  *See Morales*, 504 U.S. at 383; 49 U.S.C. App. § 1305(a)(1) (1988 ed).  The *Murphy* court acknowledged that the airline statute's "language might appear to operate directly on the States," but warned that "it is a mistake to be confused by the way in which a preemption provision is phrased."  138 S. Ct. at 1480.  "[I]f we look beyond the phrasing" of the statute, the Court reasoned, "it is clear that . . . [i]t confers on private entities (i.e., covered carriers) a federal right to engage in certain conduct subject only to certain (federal constraints)."  *Id*.  As in *Morales*, any contention here that the preemptive federal law technically regulates the states, not private actors, ignores the reality that when the private actors choose to participate in the Medicaid market, their rights are regulated by federal law, not conflicting state law.

¶32        In sum, we conclude that federal law, specifically 42 C.F.R. § 447.15, preempts Arizona's lien statutes to the extent they allow a provider to accept payment from AHCCCS, then impose a lien on the patient's tort recovery for the balance of what the provider would charge another patient.

**C.      The Patients' Claim for Injunctive and Declaratory Relief Based on Preemption.**

¶33        Given our conclusion that Medicaid law preempts the Arizona lien statutes, if the Hospitals had sued the Patients or their lawyers to enforce liens against the Patients' tort recoveries, the Hospitals' claim would be barred by preemption under the Supremacy Clause of the United States Constitution. *See, e.g., PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617 ("Where state and federal law 'directly conflict,' state law must give way.") (citation omitted). In such a situation, the federal law "effectively repeal[s] contrary state law." *Id.* at 621; *see Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378, 1384 (2015) ("[O]nce a case or controversy properly comes before a court, judges are bound by federal law."). But the Patients are the plaintiffs here, and they sued seeking to use preemption as a sword (to enjoin the Hospitals from enforcing the liens) rather than as a shield (to defeat a mirror-image suit by the Hospitals).

¶34        Citing *Armstrong*, the Hospitals argue the Patients' claims for declaratory and injunctive relief based on preemption are not cognizable. The plaintiffs in *Armstrong* were health-care providers who sued the director of the Idaho Department of Health and Welfare, alleging that state's Medicaid plan paid them less than federal law required. 135 S. Ct. at 1382. At issue was § 30(A) of the Medicaid Act, which requires states to set payment rates for medical providers that "are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan" at levels comparable to those available to the general public. 135 S. Ct. at 1382 (quoting 42 U.S.C. § 1396a(a)(30)(A)). The providers alleged the rates in the Idaho plan conflicted with § 30(A)'s mandate. They argued § 30(A) therefore preempted the Idaho plan, and "asked the court to enjoin [Idaho] to increase these rates." 135 S. Ct. at 1382.

¶35        In ruling against the providers, the Supreme Court held the Supremacy Clause "is not the source of any federal rights, and certainly does not create a cause of action." *Id.* at 1383 (quotations and citations omitted). "It instructs courts what to do when state and federal law clash, but is silent regarding who may enforce federal laws in court, and in what circumstances they may do so." *Id.* The Court acknowledged a long line of cases allowing "injunctive relief against state officers who are violating, or planning to violate, federal law." *Id.* at 1384, citing *Ex parte Young*, 209 U.S. 123, 150-51 (1908); *Osborn v. Bank of United States*, 9 Wheat. 738, 838-39, 844 (1824). But notwithstanding those cases, a court's power to grant equitable relief based on federal preemption "is subject to express and implied

statutory limitations."  *Armstrong*, 135 S. Ct. at 1385.  Thus, a preemption claim is not cognizable if Congress has precluded private enforcement of the applicable federal law or otherwise has "displace[d] the equitable relief that is traditionally available to enforce federal law."  *Id.* at 1385-86.

**¶36**          Applying that rule, the *Armstrong* Court examined § 30(A) of the Medicaid Act to discern whether Congress intended "to foreclose equitable relief" based on that provision.  135 S. Ct. at 1385 (quotation omitted).  The Court identified "[t]wo aspects" of § 30(A) that it held "establish Congress's 'intent to foreclose' equitable relief."  *Id.*  First, Congress created just one remedy "for a State's failure to comply with Medicaid's requirements."  *Id.* (citing 42 U.S.C. § 1396c (2019) (power of Secretary of HHS to withhold Medicaid funds when state's Medicaid plan "no longer complies" with federal law)).  "[T]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."  *Id.* at 1385 (quotation omitted).  Second, the Court cited "the judicially unadministrable nature of § 30(A)'s text."  *Id.*  "Explicitly conferring enforcement of this judgment-laden standard upon the Secretary alone establishes, we think, that Congress 'wanted to make the agency remedy that it provided exclusive.'"  *Id.* (citation omitted).  In sum, the Court held that "[t]he sheer complexity associated with enforcing § 30(A), coupled with the express provision of an administrative remedy, § 1396c, shows that the Medicaid Act precludes private enforcement of § 30(A) in the courts."  *Id.*

**¶37**          The Hospitals argue that when it comes to enforcing the federal ban on balance billing under 42 C.F.R. § 447.15, the Medicaid Act likewise "displace[s]" a private party's right to enjoin a violation of federal law.  They argue that, after *Armstrong*, the only means by which anyone may bring "a Medicaid-preemption claim" is by challenging CMS or HHS under the federal Administrative Procedure Act for the federal agency's approval of the state plan or its failure to withhold funding for a state's purported violation of the Medicaid Act.  *See* 5 U.S.C. § 702 (judicial review of agency action).

**¶38**          But the Hospitals' argument sweeps too broadly.  Contrary to their assertion, *Armstrong* does not support the proposition that Congress intended to foreclose any claim to enjoin a non-state actor from exercising a state-law right preempted by any provision of Medicaid law.  Although the *Armstrong* Court held there is no private right of action against a state official to enforce § 30(A) of the Medicaid Act, five of the nine justices declined to hold that no provision of the Medicaid Act may be privately

enforced. *See* 135 S. Ct. at 1388 (Justice Breyer declining to join Part IV of Justice Scalia's five-member majority opinion).

¶39 As for the narrow legal issue actually decided in *Armstrong* – that providers may not sue to enjoin a state's violation of § 30(A) of the Medicaid Act – neither of the two grounds the Court cited for that decision applies here. In the first place, § 1396c of the Medicaid Act, which the Court held is the exclusive remedy for a violation of § 30(A), does not provide the exclusive remedy – or any remedy – for the preemption violation at issue here. The providers in *Armstrong* argued the rates in the Idaho Medicaid plan violated § 30(A) because they were too low. In rejecting their claim, the Court held that when a state Medicaid plan fails to comply with the federal act, the only remedy "is the withholding of Medicaid funds by the Secretary of Health and Human Services." 135 S. Ct. at 1385, citing 42 U.S.C. § 1396c. That provision empowers HHS to withhold funding when it finds that a state Medicaid plan "no longer complies" with federal law or that "in the administration of the plan there is a failure to comply substantially" with federal law. 42 U.S.C. § 1396c.

¶40 But here, and in contrast to the plaintiffs in *Armstrong*, the Patients do not contend anything in Arizona's AHCCCS *plan* is preempted by federal law. They have no complaint with the Arizona plan or how AHCCCS implements the Arizona plan. Instead, they claim federal law preempts the Hospitals' rights to enforce liens that state law otherwise allows. As we have held, *supra* ¶¶ 22-28, Arizona's AHCCCS plan neither incorporates nor countenances application of the Arizona lien statutes under the circumstances presented here. When hospitals seek to intercept AHCCCS members' tort recoveries, they are exercising their rights under state statute, not under the AHCCCS plan or the administration of that plan subject to review by HHS. For that reason, § 1396c of the Medicaid Act is irrelevant to the Patients' claim against the Hospitals, and the Hospitals cite no authority to the contrary. *See Tohono O'odham Nation v. Ducey*, 130 F. Supp. 3d 1301 (D. Ariz. 2015) (equitable relief barred by *Armstrong* when "Congress had created a remedy" and "entrusted that remedy to the executive branch, not the courts").

¶41 Nor does the second ground on which the Court ruled in *Armstrong* apply here. The statute at issue there, § 30(A) of the Medicaid Act, requires states to adopt provider rate schedules that are "consistent with efficiency, economy, and quality of care," while at the same time "safeguard[ing] against unnecessary utilization of . . . care and services." *See* 135 S. Ct. at 1385. The Court observed that the "judgment-laden standard" set forth in § 30(A) was "judicially unadministrable," further supporting its

16

conclusion that Congress intended to foreclose a private right of action to enforce it. 135 S. Ct. at 1385.

¶42 By contrast, the Patients' claim is not based on § 30(A) but instead on 42 C.F.R. § 447.15. As we have held, the regulation preempts a hospital's right under state law to impose a lien on a patient's tort recovery to collect the balance between the hospital's customary rates and what it accepted from AHCCCS for treating the patient. The regulation raises none of the "administrability" issues that § 30(A) posed in *Armstrong*. Nor does enforcement of § 447.15 require any exercise of agency expertise or discretion. Whether the regulation preempts a state lien statute that otherwise would allow a hospital to balance bill is a legal issue of the sort that courts typically resolve. Indeed, as noted above, the injunction the superior court entered here gave the Patients the same relief that would have been available to them in defending a hypothetical action by the Hospitals to enforce liens against the Patients' tort recoveries. *See Armstrong*, 135 S. Ct. at 1384 ("a court may not hold a civil defendant liable under state law for conduct federal law requires"); *Public Health*, 693 So. 2d at 566 (affirming judgment based on preemption in favor of Medicaid patient when hospital sued to enforce lien).

¶43 In sum, the Patients' preemption claim presents neither of the concerns that caused the *Armstrong* Court to conclude that Congress intended to preclude equitable relief to the providers in that case. The Patients' claim is not grounded in the AHCCCS plan that CMS approved and therefore does not implicate the single remedy of administrative review that the Court cited in *Armstrong*. 135 U.S. at 1385. And the Patients' contention that 42 C.F.R. § 447.15 preempts Arizona's lien statutes presents none of the judicial administrability issues posed by the injunction the providers sought under § 30(A) of the Medicaid Act. Accordingly, we affirm the order of the superior court granting declaratory and injunctive relief to the Patients on their claim that federal law preempts the Hospitals' rights under A.R.S. §§ 33-931 and 36-2903.01(G)(4) to enforce liens on the Patients' recoveries for amounts beyond what AHCCCS paid the Hospitals for treating the Patients.

**D.    The Hospitals Breached a Contract Duty to Patients by Imposing the Liens.**

¶44 Federal law spells out the provisions that must be contained in the Participating Provider Agreements ("PPAs") that a state enters with providers to serve patients under Medicaid. *See* 42 C.F.R. §§ 434.1(b) (2019), 434.6(a) (2019). In their cross-appeal, the Patients argue the superior court

erred by dismissing their claim for relief as third-party beneficiaries of PPAs signed by the Hospitals and AHCCCS between 1994 and 2010 that incorporate federal law preempting Arizona's lien laws.

### 1. Rights as third-party beneficiaries of the PPAs.

¶45      Under Arizona law, a contract may allow a claim by a purported third-party beneficiary only if (1) "an intention to benefit [the claimant is] indicated in the contract itself"; (2) "[t]he contemplated benefit [is] both intentional and direct"; and (3) "it . . . definitely appear[s] that the parties intend to recognize the third party as the primary party in interest." *Nahom v. Blue Cross & Blue Shield of Ariz., Inc.*, 180 Ariz. 548, 552 (App. 1994) (quoting *Norton v. First Fed. Sav.*, 128 Ariz. 176, 178 (1981)). In *Nahom* we held that a patient was a third-party beneficiary entitled to enforce a hospital's agreement with the patient's insurer to accept the insurer's payment as payment in full. *Id.* at 550-51, 552.

¶46      Under *Nahom*, if the Hospitals' contracts with AHCCCS bar them from imposing liens on the Patients' tort recoveries, the Patients are third-party beneficiaries of those contracts. *See id.* at 553 (question is whether claimant is the beneficiary of the particular contract provision on which claim is brought). As in *Nahom*, the Patients are members of a class who would be the intended direct beneficiaries of a contract provision barring a hospital from imposing a lien on a patient's tort recovery. *See id.* at 552. Thus, *Nahom* controls here: If the PPAs prohibit the Hospitals from balance billing by imposing the liens, the Patients are third-party beneficiaries who may sue to enforce that prohibition. *Accord Linton v. Comm'r*, 65 F.3d 508, 520 (6th Cir. 1995) (patients are third-party beneficiaries of providers' contracts with state Medicaid agency).

### 2. Incorporation of federal law.

¶47      Interpretation of the PPAs is a matter of law that we review *de novo*. *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9 (App. 2009). A contract incorporates the law in force at the time of its execution. *State ex rel. Romley v. Gaines*, 205 Ariz. 138, 142, ¶ 13 (App. 2003) ("Regardless of the language of a contract, it is always to be construed in the light of the law then in force.") (quotation and alteration omitted); *Ward v. Chevron U.S.A. Inc.*, 123 Ariz. 208, 209 (App. 1979) ("The law in force at [the date of execution] form[s] a part of each contract."). Therefore, "a valid statute is automatically part of any contract affected by it, even if the statute is not specifically mentioned in the contract." *Banner Health v. Med. Sav. Ins. Co.*, 216 Ariz. 146, 150, ¶ 15 (App. 2007) (quoting *Higginbottom v. State*, 203

Ariz. 139, 142, ¶ 11 (App. 2002)).  The same is true with other legal provisions affecting the rights of the parties in effect at the time of execution.  *See, e.g.*, *Colman v. Button*, 42 Ariz. 141, 144 (1933) (constitution); *Rehart v. Clark*, 448 F.2d 170, 173 (9th Cir. 1971) (regulation); *cf. Qwest Corp. v. City of Chandler*, 222 Ariz. 474, 484-85, ¶ 34 (App. 2009) (common law).

**¶48**        At the time the Hospitals entered the PPAs, the Arizona lien statutes at issue here, A.R.S. §§ 33-931 and 36-2903.01(G)(4), were in place; so was the federal regulation prohibiting balance billing, 42 C.F.R. § 447.15.  As we have held, the federal regulation preempts §§ 33-931 and 36-2903.01(G)(4) insofar as those statutes allow a hospital that has accepted payment from AHCCCS to impose a lien on a patient's tort recovery for the balance between the AHCCCS payment and the hospital's customary rate.  As incorporated by law into the PPAs, § 447.15 invalidated any state-law rights the contracts otherwise might have allowed the Hospitals to impose the liens at issue here.  *See Maryland v. Louisiana*, 451 U.S. 725, 747 (1981) ("A state statute is void to the extent it conflicts with a federal statute."); *AES Sparrows Point LNG, LLC v. Smith*, 527 F.3d 120, 125-26 (4th Cir. 2008) (preempted state law "unenforceable under the Supremacy Clause").

**¶49**        Two versions of express "compliance-with-law" clauses in the PPAs bolster our conclusion that the contracts required the Hospitals to comply with 42 C.F.R. § 447.15.  In the first version, the General Terms and Conditions included this term:

> 6.  The Provider shall comply with all federal, State and local laws, rules, regulations, standards and executive orders governing performance of duties under this Agreement, without limitation to those designated within this Agreement.

The like provision in the second version simply stated that the provider agrees "[t]o comply with all applicable Federal and State laws and regulations."

**¶50**        The Hospitals argue the PPAs do not encompass subsequent changes in the law.  *See, e.g.*, *Fla. E. Coast Ry. Co. v. CSX Transp., Inc.*, 42 F.3d 1125, 1130 (7th Cir. 1994) ("[S]ubsequent changes in the law that are not anticipated in the contract generally have no bearing on the terms of their agreement."); *Dairyland Greyhound Park, Inc. v. Doyle*, 719 N.W.2d 408, 429-33 (Wis. 2006) (post-contract amendment to statute not incorporated in parties' agreement).  But the relevant law here has not changed: HHS issued 42 C.F.R. § 447.15 in 1980 – before the PPAs at issue were executed – and the regulation has not materially changed since then.  *See* 45 Fed. Reg. 24889

(Apr. 11, 1980). Nor does our decision that federal law preempts the lien statutes depart from prior Arizona common law. Excepting our earlier decision in *Abbott I* (later vacated, and which held the lien statutes were preempted), no Arizona appellate court has decided the issue. *See Abbott II*, 239 Ariz. at 414, ¶ 17, *vacating Abbott I*, 236 Ariz. at 436.

**¶51** The Hospitals argue otherwise, citing Arizona cases that refer to the medical-lien statutes and the rights they purport to grant AHCCCS providers. But none of the cases the Hospitals cite addresses (or even mentions) whether 42 C.F.R. § 447.15 or any other federal authority preempts a provider's right to balance bill under Arizona law. *See, e.g., Andrews v. Samaritan Health Sys.*, 201 Ariz. 379, 384, ¶ 17 (App. 2001); *LaBombard v. Samaritan Health Sys.*, 195 Ariz. 543, 549, ¶ 23 (App. 1998). Nor does our supreme court's decision in *Abbott II*, 239 Ariz. at 414, ¶¶ 17-19, reach the issue of preemption. Although the court in that case stated that the preemptive effect of federal law on providers' lien rights "was not settled in Arizona," it made that comment in explaining that the parties' accord and satisfaction was valid because no Arizona appellate court had ruled on the issue before the settlements there were executed. *Id.*

**¶52** The Hospitals also assert that the parties to the PPAs – the Hospitals themselves and AHCCCS – intended that the Hospitals would be able to enforce liens on patients' recoveries from tortfeasors. In support of this argument, the Hospitals cite A.A.C. R9-22-1007. As discussed, ¶ 27 *supra*, however, we do not accept the Hospitals' interpretation of that regulation. In any event, by agreeing in the PPAs to comply with federal law, the Hospitals agreed that a federal regulation preempting their state-law lien rights would trump any lien right allowed by AHCCCS regulation.

**¶53** In their motion for reconsideration of our initial opinion in this appeal, the Hospitals argue that one may not sue as a third-party beneficiary of a contract that incorporates federal law when that federal law does not itself permit equitable relief. *See Astra*, 563 U.S. at 118. It was undisputed in *Astra* that the applicable federal law afforded the plaintiffs no private right of action. *Id.* at 113. Given our conclusion that the Patients may sue to enforce a breach of 42 C.F.R. § 447.15, *Astra* does not bar their third-party-beneficiary claim.

**¶54** Accordingly, the Hospitals breached a duty owed to the Patients under the PPAs when they imposed the liens at issue here because those liens were invalid under federal law. We hold the superior court erred when it denied the Patients' motion for summary judgment on their

claim for breach of the PPAs and direct entry of judgment in the Patients' favor on that claim.

### E. The Breadth of the Injunction.

¶55 The Hospitals argue the superior court lacked the power to grant the Patients injunctive relief on the Patients' claim for breach of the PPAs. The injunction the court issued, however, was based not on the Patients' contract claim but on their claim for equitable relief under general preemption principles. *See generally* Ariz. R. Civ. P. 23(b)(2) (class-action treatment when defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate for the class as a whole").

¶56 We review the superior court's grant of an injunction for abuse of discretion but review its application of law *de novo*. *See Cheatham v. DiCiccio*, 240 Ariz. 314, 317-18, ¶ 8 (2016). The superior court abuses its discretion if it applies the incorrect substantive law or injunction standard or bases "its decision on an erroneous material finding of fact." *TP Racing, L.L.L.P. v. Simms*, 232 Ariz. 489, 492, ¶ 8 (App. 2013).

¶57 The Hospitals contend the injunction is too broad in that it purports to extend to medical services not funded by AHCCCS. In relevant part, the injunction permanently enjoins the Hospitals "from filing or asserting any lien or claim against a patient's personal injury recovery, after having received *any* payment from AHCCCS for the same patient's care." (Emphasis in original.) The Hospitals argue the reference to "any payment" may prevent a hospital from filing a lien to collect fees it is owed for services not covered by AHCCCS. The Hospitals contend there are situations in which AHCCCS covers only some of the services they have provided a patient, and they argue the injunction erroneously will bar them from seeking payment for services for which AHCCCS has not paid.

¶58 The Hospitals, however, do not point to anything in the record showing that such a situation has occurred, and we normally will not issue advisory opinions on issues not squarely before us. *Sw. Barricades, L.L.C. v. Traffic Mgmt., Inc.*, 240 Ariz. 139, 142, ¶ 17, n.3 (App. 2016). Should the situation the Hospitals posit arise, they "will be able, at that time, to apply to the superior court for appropriate modification" to the injunction. *TP Racing*, 232 Ariz. at 496, ¶ 25; *see also State v. Portland Cement Ass'n*, 142 Ariz. 421, 425 (App. 1984) (court of original jurisdiction has power to modify its injunction when circumstances change).

**F.      Attorney's Fees.**

**¶59**       After prevailing on their claim based on the Supremacy Clause, the Patients sought attorney's fees under the private attorney general doctrine, and the court entered an award of $1,221,902. *See generally Arnold v. Ariz. Dep't of Health Servs.,* 160 Ariz. 593, 609 (1989) (private attorney general doctrine allows fees to party that has vindicated an important public right).

**¶60**       The Hospitals argue the private attorney general doctrine does not allow an award of fees on a preemption claim brought under the Supremacy Clause. *See Alyeska Pipeline Serv. v. Wilderness Soc'y*, 421 U.S. 240, 245-71 (1975) (doctrine does not allow fees award in challenge to federal agency action); *Challenge, Inc. v. State ex rel. Corbin*, 138 Ariz. 200, 206 (App. 1983) (federal law governs availability of fees in claim brought under 42 U.S.C. § 1983). We need not decide whether the private attorney general doctrine applies in a preemption claim brought under the Supremacy Clause because we conclude the superior court had discretion to award fees under A.R.S. § 12-341.01(A) (2019) to the Patients on their third-party claim for breach of contract.

**¶61**       In their motion for reconsideration, the Hospitals do not contend the hourly rates represented in the fees award are unreasonably high, but urge us to remand the fees award so that the superior court may exercise its discretion to decide whether to award fees under § 12-341.01(A). *See Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570 (1985) (citing factors court should consider in deciding whether to award fees under § 12-341.01). In awarding fees to the Patients under the private attorney general doctrine, however, the superior court expressly stated it also had considered "the factors set forth" in *Warner*.

**¶62**       In support of a fees award under § 12-341.01, the Patients have filed an "exemplar" retainer agreement signed by plaintiff Walter Ansley. In relevant part, it states:

> On behalf of the class and of themselves, Plaintiff acknowledges that Attorneys may apply to the Court for fees of up to 30% of all recoveries and relief obtained, plus advanced costs, all of which shall be fully subject to court approval. . . . In the event the Court awards an hourly fee to be paid by Defendants, Plaintiffs will support an application to the Court for a fee of $410 per hour for the two senior attorneys and $125 per hour for any billable paralegal time.

The Hospitals argue § 12-341.01(A) does not allow fees because this retainer agreement did not obligate the Patients to pay the lawyers for their work on the case. *See* § 12-341.01(B) ("award may not exceed the amount paid or agreed to be paid").

¶63        The law is clear that a contingent fee agreement by which a client promises to pay a lawyer a percentage of the client's recovery will satisfy § 12-341.01(B). *See Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 545 (1982) (applying § 12-341.01(B)); *Moedt v. General Motors Corp.*, 204 Ariz. 100, 103, ¶ 11 (App. 2002) (contingent fee agreement created "genuine financial obligation" on the part of the client to pay fees). The Hospitals do not take issue with that principle. They contend, however, that even though the retainer agreement here would require the Patients to pay their lawyers 30% of any monetary recovery, since the Patients recovered no damages, their lawyers are entitled to nothing.

¶64        But the contingent-fee provision in the retainer agreement is broader than "damages" and applies to "all recoveries and relief obtained." The "relief obtained" in this case is the injunction the Patients' lawyers won against past, present and future liens by the Hospitals on tort recoveries by the plaintiff class. The Hospitals do not argue that the fees the superior court awarded exceed the ratio of 30% of the funds the injunction preserved for members of the class.

¶65        Otherwise, as for the amount of the award, the Hospitals contend the superior court abused its discretion by failing to discount the fees the Patients sought for work performed (1) in a similar federal-court case they voluntarily dismissed before commencing this one; and (2) on issues pertaining to the group of *Abbott* plaintiffs who had settled their lien claims with the Hospitals. "We review the amount of the superior court's attorney fees and costs awards for an abuse of discretion." *Lee v. ING Inv. Mgmt., LLC*, 240 Ariz. 158, 161, ¶ 11 (App. 2016).

¶66        The Hospitals argue that more than $485,000 of the fees awarded were incurred not in this case but in a federal-court lawsuit the Patients filed, then voluntarily dismissed, before refiling their claims in superior court. The Patients contend that those fees included the time spent in "vet[ting] hundreds of potential class representatives" for the claims, researching Medicaid plans across the country and interviewing expert witnesses.

¶67        The Hospitals cite *Vicari v. Lake Havasu City*, 222 Ariz. 218, 223-24, ¶¶ 18-21 (App. 2009), for the proposition that the defendant is the

prevailing party when a plaintiff voluntarily dismisses the complaint. The issue here, however, is whether a court abuses its discretion in awarding fees for legal work performed in connection with a prior case before dismissing it, when that work is integral to the plaintiff's successful prosecution of a subsequent claim. When the Hospitals objected in the superior court to the Patients' request for the fees they incurred in the federal case, the Patients responded that the legal and factual research performed in that case was "clearly calculated to – and in fact did – bring about" their success in this case. Under the circumstances, the superior court did not abuse its discretion in declining to reduce the Patients' fees to take into account work performed in the federal matter. *See First Nat. Bank of Ariz. v. Cont'l Bank*, 138 Ariz. 194, 200 (App. 1983) ("pre-complaint investigation and evaluation of the potential claim is part of the process and expense of litigation").

¶68 The Hospitals finally argue that the superior court abused its discretion in awarding fees for work performed for the group of patients whose claims were dismissed in *Abbott II*. The Hospitals contend that $60,442 of the fees the Patients were awarded was incurred in connection with superior court proceedings involving those plaintiffs.

¶69 In determining the reasonableness of the number of hours expended by an attorney, the superior court must consider whether the claimed work "would have been undertaken by a reasonable and prudent lawyer to advance or protect [the] client's interest." *Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 188 (1983). "Furthermore, time spent on unsuccessful issues or claims may not be compensable." *Id.* On the other hand, when a party has "accomplished the result sought in the litigation, fees should be awarded for time spent even on unsuccessful legal theories. Where a party has achieved only partial or limited success, however, it would be unreasonable to award compensation for all hours expended, including time spent on . . . unsuccessful issues or claims." *Id.* at 189; *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 266-67, ¶ 24 (App. 2004).

¶70 When the superior court in this case ruled on the Patients' fee request in 2014, that court could not know that the supreme court ultimately would reject the *Abbott* plaintiffs' claims. Although the Hospitals addressed this issue in a motion for new trial filed after the case was reassigned to another division of the Maricopa County Superior Court, the judge newly assigned to the case declined to reconsider the fees award in light of the supreme court's decision in *Abbott II*.

**¶71** Under the circumstances, we remand the fees award to the superior court so that it may exercise its discretion to review the Patients' claim for the $60,442 in fees incurred in connection with the claims brought by the *Abbott* plaintiffs.

## CONCLUSION

**¶72** We hold that applicable federal law, 42 C.F.R. § 447.15, preempts A.R.S. §§ 33-931 and 36-2903.01(G)(4) to the extent those statutes allow a health-care provider that has accepted payment from AHCCCS for treating a patient to impose a lien on the patient's tort recovery for the difference between what the provider accepted from AHCCCS and the amount the provider would have charged a non-AHCCCS patient. For the reasons set out above, we affirm the superior court's entry of summary judgment in favor of the Patients on their claim for declaratory relief and the court's order enjoining the Hospitals from enforcing any lien rights they may have under state law to recover those funds.

**¶73** We also hold the Patients are third-party beneficiaries of the contracts the Hospitals entered with AHCCCS to serve AHCCCS members. Those contracts required the Hospitals to comply with federal law, including 42 C.F.R. § 447.15. Accordingly, we reverse and remand the dismissal of the Patients' claim for breach of contract and direct entry of judgment in favor of the Patients on that claim.

**¶74** Finally, we affirm the superior court's award of fees to the Patients, excepting only the amount of $60,442, which the Patients sought for work performed in connection with the *Abbott* case, and we direct the superior court on remand to reconsider that fees claim. We award the Patients their costs on appeal and their attorney's fees pursuant to A.R.S. § 12-341.01(A), contingent upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED: AA