IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

───────────────

**WALTER ANSLEY, ET AL.,**
*Plaintiffs/Appellees/Cross-Appellants,*


*v.*


**BANNER HEALTH NETWORK, ET AL.,**
*Defendants/Appellants/Cross-Appellees.*

───────────────

No. CV-19-0077-PR
Filed March 9, 2020

───────────────

Appeal from the Superior Court in Maricopa County
The Honorable Dawn M. Bergin, Judge
No. CV2012-007665
**AFFIRMED**


Opinion of the Court of Appeals, Division One
246 Ariz. 240 (App. 2019)
**VACATED**

───────────────

COUNSEL:

Geoffrey M. Trachtenberg, Justin Henry, Levenbaum Trachtenberg, P.L.C., Phoenix; B. Lance Entrekin (argued), The Entrekin Law Firm, Phoenix, Attorneys for Walter Ansley, et al.

Richard B. Burnham, Cameron C. Artigue (argued), Christopher L. Hering, Gammage & Burnham, P.L.C., Phoenix, Attorneys for Banner Health Network, et al.

Stanley G. Feldman, Miller, Pitt, Feldman & McAnally, P.C., Tucson; Lincoln Combs, Gallagher & Kennedy, P.A., Phoenix; David L. Abney,

Ahwatukee Legal Office, P.C., Phoenix, Attorneys for Amicus Curiae Arizona Association for Justice/Arizona Trial Lawyers Association

————————

JUSTICE BOLICK authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES GOULD, LOPEZ, MONTGOMERY, and PELANDER (RETIRED)* joined.

————————

JUSTICE BOLICK, opinion of the Court:

¶1        The questions this case poses are whether Medicaid patients may sue to challenge Arizona statutes authorizing the recording of liens against third-party tortfeasors for hospitals to recover health care costs exceeding their Medicaid reimbursement; and if so, whether federal law preempts the lien statutes.  We hold that the patients have a private right of action, and that A.R.S.  §§ 33-931(A) and 36-2903.01(G)(4) are preempted to the extent hospitals utilize them against third-party tortfeasors for "balance billing" to recover costs exceeding Medicaid reimbursement.

## BACKGROUND

¶2        Plaintiffs are patients who were treated at defendant hospitals under the Arizona Health Care Cost Containment System ("AHCCCS"), which is the state's contract provider for the federal Medicaid program and negotiates reimbursement rates with hospitals.  The hospitals recorded liens against the third-party tortfeasors who caused the patients' injuries to recover the remainder of their customary fees beyond Medicaid reimbursement.  Arizona Revised Statutes § 33-931(A) allows medical providers to secure "a lien for the care and treatment . . . of an injured person" in an amount equal to their "customary charges for care."  Section 36-2903.01(G)(4) provides that a "hospital may collect any unpaid portion of its bill from other third-party payors."

————————

* Justice James P. Beene has recused himself from this case.  Pursuant to article 6, section 3 of the Arizona Constitution, Justice John Pelander (retired), was designated to sit in this matter.

2

¶3 The patients filed this class action challenging the liens, contending that the authorizing statutes violate federal Medicaid law, specifically 42 U.S.C. § 1396a(a)(25)(C) and 42 C.F.R. § 447.15. The regulation, which implements the statute, provides that state Medicaid plans must limit participation to "providers who accept, as payment in full, the amounts paid by the agency plus any deductible, coinsurance or copayment required by the plan to be paid by the individual."

¶4 Some of the patients settled with the hospitals, agreeing to pay negotiated amounts in exchange for the hospitals releasing their liens and allowing the patients to receive their full personal injury awards. The settling patients then sued to set aside the agreements, arguing that Arizona's lien statutes are preempted by federal law and thus unenforceable. In *Abbott v. Banner Health Network*, this Court upheld the trial court's dismissal of those claims. 239 Ariz. 409 (2016). Although the Court assumed, without deciding, that the lien statutes were preempted by federal law, *id.* at 411 ¶ 2, we determined that "at the time of the accord and satisfaction agreements here, no Arizona appellate court had addressed the enforceability of Arizona's medical lien statutes against third-party settlements obtained by Medicaid patients," *id.* at 414 ¶ 17, and thus the settlements were valid under Arizona law. *Id.* ¶ 18.

¶5 The non-settling class members, the patients here, continued to challenge the lien statutes. Moving for summary judgment in the trial court, the patients argued, among other things, (1) that the liens are an attempt to recover hospital costs in excess of Medicaid reimbursement ("balance billing") that is preempted by federal law under the Supremacy Clause, U.S. Const. Art. VI, cl. 2; and (2) that the hospitals' contracts with AHCCCS incorporate federal law (which preempts balance billing) and as third-party beneficiaries of those contracts, the patients are entitled to enforce those provisions, precluding the liens.

¶6 The trial court enjoined the hospitals from "filing or asserting any lien or claim against a patient's personal injury recovery, after having received *any* payment from AHCCCS for the same patient's care." The court rejected the patients' third-party beneficiary argument, but ruled that A.R.S. § 36-2903.01(G)(4) is preempted by federal law. The court awarded attorney fees to the patients under the private attorney general doctrine. *See Arnold v. Ariz. Dep't of Health Servs.*, 160 Ariz. 593, 609 (1989).

¶7 The court of appeals affirmed but applied different reasoning. *Ansley v. Banner Health Network*, 246 Ariz. 240 (App. 2019).[1] The court first concluded that §§ 33-931(A) and 36-2903.01(G)(4) are preempted and "invalid to the extent they allow a hospital to impose a lien on a patient's tort recovery for the balance between what the hospital accepted from AHCCCS for treating the patient and what it might have charged another patient." *Id.* at 249 ¶ 22. The court then held that the patients were not precluded from asserting a private right of action under the Medicaid Act by *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015). *Ansley*, 246 Ariz. at 254 ¶ 43. Additionally, the court determined that the patients could raise the preemption argument as third-party beneficiaries for breach of the contract between AHCCCS and the hospitals. *Id.* at 256 ¶ 53. The court affirmed most of the attorney fees awarded by the trial court and granted attorney fees the patients incurred in the court of appeals, but predicated the awards not on the private attorney general doctrine, which it did not reach, but on A.R.S. § 12-341.01(A), which authorizes a fee award for the successful party in a contract action. *Id.* at 257, 259 ¶¶ 60, 74.

¶8 We granted the hospitals' petition for review because whether the lien statutes are preempted for balance billing purposes is a recurring issue of statewide concern. We have jurisdiction pursuant to article 6, section 5, clause 3 of the Arizona Constitution. The issues raised present solely questions of law, which we review de novo. *Conklin v. Medtronic, Inc.*, 245 Ariz. 501, 504 ¶ 7 (2018).

## DISCUSSION

### I. PRIVATE RIGHT OF ACTION

¶9 We first address whether the patients may maintain this action. In their arguments, the patients repeatedly blur the lines between whether the lien statutes are preempted and whether the patients have a cause of action to raise that claim. The two questions overlap but are analytically distinct. Even if the lien statutes are preempted, it does not necessarily follow that the patients have a private right of action. We

---

[1] The decision on appeal superseded an earlier decision by the court of appeals. *Ansley v. Banner Health Network*, 244 Ariz. 389 (App. 2019).

therefore initially consider whether the patients have a private right of action to enforce the Medicaid provisions concerning balance billing.

¶10 Contrary to the patients' repeated assertions, the United States Supreme Court has not expressly recognized a general private right of action to enforce rights and duties under Medicaid. Nor, contrary to the hospitals' contention, did the Court categorically foreclose such an action in *Armstrong*. Because the patients sued hospitals, not state officials, to prevent enforcement of the lien statutes, we are not dealing with the familiar framework applicable to such an action as set forth in *Ex Parte Young*, 209 U.S. 123 (1908), which held that courts' inherent power to enjoin state action in violation of federal law was not eliminated by the Eleventh Amendment. Instead, we are dealing with a highly unusual situation where one group of private parties, the hospitals, is invoking a state-law procedure that may violate federal law provisions that protect another group of private parties, the patients. Determining whether the patients may sue to enforce federal protections against private parties who are invoking and defending state statutes thus involves atypical parties but an otherwise familiar legal setting.

¶11 Under the Supremacy Clause, federal statutes enacted pursuant to a power conferred by the Constitution preempt conflicting state laws. *Armstrong*, 575 U.S. at 324. However, the Supremacy Clause is not the source of any rights, "and certainly does not create a cause of action. It instructs courts what to do when state and federal law clash, but is silent regarding who may enforce federal laws in court, and in what circumstances they may do so." *Id.* at 325.

¶12 The patients rely on 42 C.F.R. § 447.15 as the primary source of a federally protected interest against balance billing. As we discuss *infra* ¶ 33, a federal regulation adopted pursuant to congressional authorization can preempt a conflicting state law, but a regulation cannot create a private right of action. Rather, "private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Thus, "it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself." *Id.* at 291.

¶13　　　　Our task, then, "is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy.　Statutory intent on this latter point is determinative." *Id.* at 286 (internal citation omitted).　The applicable statute is 42 U.S.C. § 1396a(a)(25)(C), which provides in relevant part that "in the case of an individual who is entitled to medical assistance under the [s]tate plan with respect to a service for which a third party is liable for payment, the person furnishing the service may not seek to collect from the individual . . . payment of an amount for that service . . . ."

¶14　　　　In our view, this language creates an enforceable right on the part of Medicaid patients, specifically, that the Medicaid reimbursement will constitute full payment of hospital bills, precluding further recovery. Although this is not an action under 42 U.S.C. § 1983, cases applying that statute are helpful in analyzing whether an enforceable right exists.　In *Blessing v. Freestone*, the Supreme Court set forth the three criteria for determining whether a federal statutory provision confers an enforceable right.　520 U.S. 329 (1997).　First, "Congress must have intended that the provision in question benefit the plaintiff."　*Id.* at 340 (citation omitted). Second, "the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence."　*Id.* at 340–41 (citation omitted).　Finally, "the statute must unambiguously impose a binding obligation on the States" in "mandatory, rather than precatory, terms."　*Id.* at 341.　If an enforceable right is established, it can be defeated only if Congress explicitly foreclosed a private right of action, or did so impliedly "by creating a comprehensive enforcement scheme that is incompatible" with a private right of action.　*Id.*

¶15　　　　The first criterion is easily satisfied: the statute plainly protects a patient against being charged for a service for which Medicaid has paid.　The hospitals respond that the liens are enforced against the third-party tortfeasors, not against the patients, which is technically true. *See Blankenbaker v. Jonovich*, 205 Ariz. 383, 387 ¶¶ 17–18 (2003) (examining health care liens outside of the Medicaid context).　However, to the extent that balance billing results in payment to the hospital instead of the patients from the third-party tortfeasors, it necessarily reduces the patients' tort recovery amount, which is exactly what § 1396a(a)(25)(C) seeks to prevent. *See, e.g.*, *Samsel v. Allstate Ins. Co.*, 204 Ariz. 1, 7 ¶ 21 (2002) (depicting a tort recovery as a property interest of the victim in a lien context); *see also*

*Spectrum Health Continuing Care Grp. v. Anna Marie Bowling Irrevocable Tr.*, 410 F.3d 304, 317 (6th Cir. 2005); *Gister v. Am. Family Mut. Ins. Co.*, 818 N.W.2d 880, 887 ¶ 18 (Wis. 2012) ("Both case law and logic indicate that St. Joseph's liens must be considered an effort 'to collect from' the patients.").

¶16 The second and third criteria are met as well: the statutory language is clear and categorical, not vague or amorphous, and it is mandatory. Thus, although we reject the patients' sweeping claim that the Medicaid statute as a whole creates a private right of action, *see Blessing*, 520 U.S. at 342 (noting that "it is impossible to determine" whether the statute before the Court "as an undifferentiated whole, gives rise to undefined 'rights'"), § 1396a(a)(25)(C) provides precisely the "manageable analytical bite[]" that allows us to discern the existence of an enforceable right. *Id.*; *see also Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 511–12 (1990) (private right of action under Medicaid statute, 42 U.S.C. § 1396a(a)(13)(A), for provider reimbursement at reasonable and adequate rates); *Wright v. Roanoke Dev. & Hous. Auth.*, 479 U.S. 418, 429–30 (1987) (tenants of public housing had a private right of action under 42 U.S.C. § 1437a to have utility costs included within rental payment that did not exceed thirty percent of income). The statute therefore creates an enforceable right against healthcare providers who seek to recover costs beyond those reimbursed by Medicaid.

¶17 Turning to the nature of the remedy, federal rights are generally enforceable in equity. This is not an action challenging official action under color of state law per 42 U.S.C. § 1983, which by its terms restricts the types of actions that may be filed. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). Nor is it an action that seeks monetary damages from the state. *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011). Rather, it is a suit in equity. The nature of the right—to be free from charges beyond the Medicaid reimbursement—lends itself to equitable relief. Courts have broadly recognized equitable actions by plaintiffs seeking injunctive relief against state officials enforcing state regulations on federal preemption grounds. *See, e.g.*, *Verizon Md., Inc. v. Pub. Serv. Comm'n Of Md.*, 535 U.S. 635, 642 (2002); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983); *Ute Indian Tribe v. Lawrence*, 875 F.3d 539, 543 (10th Cir. 2017); *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 554 (6th Cir. 2012); *Tohono O'odham Nation v. Ducey*, 130 F. Supp. 3d 1301, 1315 (D. Ariz. 2015).

¶18        That is exactly the situation presented here: while this action is ostensibly to prevent the hospitals, who are private parties, from imposing liens, it is in substance an action to prevent the operation of a state law permitting liens.  It is the operation of state law, not merely the private acts of the hospitals, that the patients seek to enjoin.  For this reason, while this is not an *Ex parte Young* case, the logic of its holding applies.  *Ex parte Young*, as noted *supra* ¶ 10, held that courts' inherent power to enjoin state action in violation of federal law was not abolished by the Eleventh Amendment.  Here, where the nominal party to be enjoined is a private actor, there is no Eleventh Amendment question, and the inherent power of the courts to prevent state action that violates federal law remains intact.

¶19        Recognizing a suit in equity to enjoin a violation of an enforceable federal right makes sense, given that if the hospitals were seeking to enforce the liens, those defending the lawsuits could raise preemption as a defense.  Thus, the injunction here is "nothing more than the pre-emptive assertion in equity of a defense that would otherwise have been available in the [defendant's] enforcement proceedings at law." *Stewart*, 563 U.S. at 262 (Kennedy, J., concurring).

¶20        A suit in equity to enforce a federal right is not cognizable, however, if Congress has expressly prohibited it.  Plaintiffs "cannot, by invoking our equitable powers, circumvent Congress's exclusion of private enforcement" of a statutory provision. *Armstrong*, 575 U.S. at 328.  In *Armstrong*, Medicaid providers sought to challenge the state's failure to amend reimbursement rates as a violation of § 30(A) of the Medicaid Act, 42 U.S.C. § 1396a(a)(30)(A).  The Court found that § 30(A) contained two features that evidence congressional intent to foreclose a private right of action.  First, Congress expressly provided that the "sole remedy" for a state's breach of its Medicaid contract "is the withholding of Medicaid funds by the Secretary of Health and Human Services." *Armstrong*, 575 U.S. at 328 (citing 42 U.S.C. § 1396c).  While that administrative remedy "might not, *by itself*, preclude the availability of equitable relief," the Court held, "it does so when combined with the judicially unadministrable nature of § 30(A)'s text." *Id.*  The Court found that the statute explicitly vested in the Secretary authority to enforce the "judgment-laden standard" for determining Medicaid funding. *Id.*  The Court concluded that "[t]he sheer complexity associated with enforcing § 30(A), coupled with the express

provision of an administrative remedy . . . shows that the Medicaid Act precludes private enforcement of § 30(A) in the courts." *Id.* at 329.[2]

¶21 Neither of those factors indicating congressional intent to preclude a private equitable right of action is present here. At oral argument, counsel for the hospitals identified two administrative remedies the patients can pursue here: they could file a grievance under A.R.S. § 36-2903.01, or they could challenge the Center for Medicare and Medicaid Services' ("CMS") approval of the state's Medicaid contract pursuant to the judicial review provisions of the federal Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.* We note at the outset that neither is the type of express, self-contained administrative remedy that 42 U.S.C. § 1396c provides for violations of § 30(A) of the Medicaid Act, and therefore do not on their face evidence congressional intent to foreclose a private equitable right of action. Nor do they provide meaningful alternative means of relief.

¶22 Arizona Revised Statutes § 36-2903.01(B)(4) empowers the AHCCCS director to establish a grievance procedure by rule, but the statute does not itself create such a grievance procedure. The authorized process on its face pertains to individual benefits. An affidavit from a former AHCCCS inspector general attests that the agency has established no administrative process to hear balance billing objections. Nor have the hospitals identified any statutory source of AHCCCS authority over liens.[3]

---

[2] A plurality of the Court also concluded that § 30(A) does not by its terms create a private right of action, reasoning that providers are not intended beneficiaries of the Medicaid agreement, that private parties do not have standing to enforce government contracts, and that § 30(A) does not unambiguously confer a private right of action. *Armstrong*, 575 U.S. at 331–32 (plurality). We do not apply this portion of the opinion to foreclose a private right of action here both because it pertains only to § 30(A) and it did not command a majority of the Court.

[3] An agency rule, A.A.C. R9-22-1007, requires that hospitals notify AHCCCS upon treating a patient whose injuries arise from the liability of a third party. However, the context of the rule indicates that requirement exists because AHCCCS is the payor of last resort, after payment has been made by other parties. No reference is made to balance billing on the part of health service providers. Similarly, the Provider Participation

¶23 Likewise, the judicial review provisions of the APA do not prescribe the type of remedy necessary to foreclose a private right of action here as they are not the type of remedy tailored to the deprivation of the specific right that *Armstrong* contemplates. Although the general judicial review provisions might be adequate to foreclose a private right of action elsewhere in the Medicaid statute, here such review would be a mismatch for what the patients seek, which is not to challenge the approval of Arizona's Medicaid plan but to prevent balance billing.

¶24 The hospitals argue that the patients should administratively challenge the federal agency's approval of AHCCCS's plan because it encompasses the state's lien statutes. But it does not.

¶25 The hospitals rely on *Douglas v. Independent Living Center of Southern California, Inc.*, 565 U.S. 606 (2012), both for the proposition that CMS, the agency in charge of administering Medicaid, reviews state statutes in the process of approving state Medicaid plans, and that the proper remedy for correcting an erroneous CMS determination is an APA challenge. In reality, CMS reviews "the State's *plan* and amendments to determine whether they comply with the statutory and regulatory requirements governing the Medicaid program." *Id.* at 610 (emphasis added). It reviews statutes only when they result in an amendment to the plan, as in *Douglas*. *Id.* at 613; *see also* 42 C.F.R. § 430.12(c)(1)(ii) (state must file a plan amendment to reflect "[m]aterial changes in State law, organization, or policy, or in the State's operation of the Medicaid program"). The patients corroborated this understanding with an affidavit from a former CMS general counsel, who attests that the Arizona plan approved by CMS does not encompass balance billing by hospitals and that, in his view, "CMS would not have approved such a plan if it did." Indeed, he recounts that California applied for a waiver to engage in the exact same practice and it was denied. Nothing in Arizona's plan would alert CMS to the lien statutes or their possible use for balance billing. To the contrary, AHCCCS's own regulations forbid balance billing. A.A.C. R9-22-702(B) ("Registered providers must accept payment from the Administration or a contractor as payment in full.").

---

Agreement ("PPA") establishes that the provider may bill AHCCCS "only after a potential third-party payer has been billed." It does not, contrary to the hospitals' assertion, authorize balance billing by the provider.

¶26　　　　For that same reason, the APA remedy is not relevant as the patients are not challenging the AHCCCS plan as approved by CMS. Rather, they are challenging application of statutes that permit liens against third-party tortfeasors, which is not a part of the plan.

¶27　　　　Finally, a private right of action under § 1396a(a)(25)(C) is not "judicially unadministrable." *Armstrong*, 575 U.S. at 328. Unlike the "judgment-laden standard" requiring administrative expertise at issue in *Armstrong*, the statutory provision and implementing regulation at issue here present a straightforward rule, and whether the statute and rule preempt state statutes is an issue quintessentially subject to judicial review. *See, e.g.*, *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644 (2003).

¶28　　　　For all of these reasons, we conclude a private right of action exists under § 1396a(a)(25)(C) for patients to seek equitable relief precluding the application of state lien statutes. We note that notwithstanding *Armstrong*'s holding that § 30(A) of the Medicaid Act does not furnish such a right, other courts have concluded that certain provisions of the Act do provide private rights of action. *See, e.g.*, *Planned Parenthood of Kan. v. Andersen*, 882 F.3d 1205, 1224 (10th Cir. 2018); *BT Bourbonnais Care, LLC v. Norwood*, 866 F.3d 815, 824 (7th Cir. 2017), and cases cited therein, *id.* at 820–21; *Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445, 461 (5th Cir. 2017); *S.R. v. Penn. Dep't of Human Servs.*, 309 F. Supp. 3d 250, 258–59 (M.D. Penn. 2018); *J.E. v. Wong*, 125 F. Supp. 3d 1099, 1105–06 (D. Haw. 2015).

¶29　　　　We briefly address two alternative bases for relief cited by the patients. First, the patients seek relief as third-party beneficiaries of the contract between AHCCCS and the hospitals, which they contend prohibits balance billing by incorporating federal law. The court of appeals held that "the Hospitals breached a duty owed to the Patients under the PPAs when they imposed the liens at issue here because those liens were invalid under federal law." *Ansley*, 246 Ariz. at 256 ¶ 54.

¶30　　　　Whether or not the patients are third-party beneficiaries under the contract, the hospitals did not breach the contract because a promise to comply with the law is not the same as a promise to correctly forecast future court decisions on preemption, which had not yet occurred when the contracts here were signed. *See Abbott*, 239 Ariz. at 415 ¶ 18.

11

Moreover, the Supreme Court has held that an action to enforce a contract that incorporates federal statutory obligations cannot substitute for a private right of action where it "is in essence a suit to enforce the statute itself." *Astra USA v. Santa Clara Cty.*, 563 U.S. 110, 118 (2010). Accordingly, we reject the court of appeals' holding that the patients could sue to enforce the contract between AHCCCS and the hospitals against the liens.

**¶31** The patients also argue that the Declaratory Judgment Act, A.R.S. § 12-1831, provides a cause of action to challenge the lien statutes. The hospitals contend that the patients failed to make this argument in the courts below and therefore waived it, and indeed the court of appeals did not separately address this issue. Regardless, although the Act provides a procedural mechanism to mount a preemption challenge, it cannot create a private right of action to do so. *See, e.g.*, *Snyder v. HSBC Bank*, 913 F. Supp. 2d 755, 770 (D. Ariz. 2012) (stating declaratory judgment action must have an underlying cause of action). Only Congress may do that. *See, e.g.*, *Sandoval*, 532 U.S. at 286 ("[P]rivate rights of action to enforce federal law must be created by Congress."). Declaratory relief is available and applicable here because Congress created an enforceable private right, but the Act does not independently create the cause of action.

## II. PREEMPTION

**¶32** Because the patients have a private right of action to enforce § 1396a(a)(25)(C), we next address whether federal law preempts Arizona's lien statutes as applied to secure payment from third-party tortfeasors for the difference between Medicaid reimbursement and the hospitals' actual costs. We agree with the court of appeals that the lien statutes as applied are preempted. *Ansley*, 246 Ariz. at 246–54 ¶¶ 9–43.

**¶33** This case presents an issue of "conflict preemption," that is, where state law stands as an obstacle to the achievement of a federal statute's purpose, or when compliance with both federal and state laws is impossible. *See, e.g.*, *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 699 (1984). On this question, our inquiry broadens to encompass not only federal statutes, but also regulations. Although it cannot independently create a private right of action, *supra* ¶ 12, a regulation validly implementing a

federal statute has the same preemptive effect. *Wyeth v. Levine*, 555 U.S. 555, 576 (2009).

¶34        In *Abbott*, we assumed without deciding that federal law preempts the lien statutes, 239 Ariz. at 411 ¶ 2, declaring that "federal Medicaid law explicitly prohibits balance billing." *Id.* at 412 ¶ 9. Section 1396a(a)(25)(C) states that when a person receives Medicaid assistance for which a third party is liable, a provider "may not seek to collect from the individual . . . payment of an amount for that service." From the statute's plain language prohibiting direct balance billing of the patient, we could infer that it prohibits indirect balance billing in the form of a lien that diminishes the patient's recovery from the liable third party. *See Spectrum*, 410 F.3d at 317 (noting the entirety of a recovery settlement belongs to the injured party and that a provider lien "is merely an encumbrance upon that property").

¶35        But we need not draw such an inference because 42 C.F.R. § 447.15 expressly provides that "[a] State plan must provide that the Medicaid agency must limit participation in the Medicaid program to providers who accept, as payment in full, the amounts paid by the agency plus any deductible, coinsurance or copayment required by the plan to be paid by the individual." As we noted in *Abbott*, this amounts to a categorical prohibition against balance billing. 239 Ariz. at 412 ¶ 9. "All the courts which have considered the issue of whether a service provider, who has already accepted a Medicaid payment, may recover additional sums after a patient has received damages in a personal injury lawsuit have denied the provider's claim." *Spectrum*, 410 F.3d at 314; *id.* at 314–18 (listing cases); *Lizer v. Eagle Air Med Corp.*, 308 F. Supp. 2d 1006, 1010 (D. Ariz. 2004) (listing cases); *Smith v. Mahoney*, 150 A.3d 1200, 1206 (Del. 2016); *Gist v. Atlas Staffing, Inc.*, 910 N.W.2d 24, 32 n.7 (Minn. 2018); *Mulberry Square Elder Care & Rehab. Ctr. v. Dep't of Human Servs.*, 191 A.3d 953, 965 (Pa. Commw. Ct. 2018).

¶36        The hospitals' liens are designed to secure payment from third parties in excess of the Medicaid reimbursement. Such use of the lien statutes cannot coexist with the federal prohibition against balance billing, and therefore the statutes so applied are preempted. *Accord Lizer*, 308 F. Supp. 2d at 1010 ("[T]he ultimate purpose and objective of the federal Medicaid provisions regarding balance billing is to protect individuals

covered by Medicaid from having to pay any more for medical services than the amount paid by Medicaid. . . . [T]he Arizona health-care provider lien statute is an obstacle to that purpose being accomplished [and] [t]herefore is preempted."). We therefore conclude that the lien statutes, A.R.S. §§ 33-931(A) and 36-2903.01(G)(4), are unconstitutional as applied.

### III. ATTORNEY FEES

**¶37** The court of appeals awarded attorney fees to the patients under A.R.S. § 12-341.01(A), which provides that fees may be awarded to successful parties in actions arising out of contract. *Ansley*, 246 Ariz. at 257 ¶ 60. As the patients have not prevailed on this claim, *supra* ¶¶ 29–30, we do not uphold the court's award of attorney fees under the statute.

**¶38** However, we affirm the trial court's award of attorney fees under the private attorney general doctrine. Courts may award such fees in certain cases vindicating important constitutional or statutory rights. *See Arnold*, 160 Ariz. at 609.[4] Although whether the doctrine applies is a legal question we review de novo, we review the trial court's award for an abuse of discretion. *State ex rel. Corbin v. Tocco*, 173 Ariz. 587, 595 (App. 1992); *see State v. Boykin*, 112 Ariz. 109, 114 (1975).

**¶39** Fees are permissible under the private attorney general doctrine for a party who has vindicated a right that (1) benefits a large number of people, (2) requires private enforcement, and (3) is of societal importance. *Arnold*, 160 Ariz. at 609. Those criteria are satisfied here.

**¶40** This case unquestionably benefits a large number of people; not only class members, but future Medicaid patients whose recovery for damages from third-party tortfeasors would also face reduction by virtue of enforcement of hospital liens. Ordinarily, class action lawsuits seek monetary damages, and attorneys prosecuting such actions will receive

---

[4] In *Arnold*, the Court erroneously stated that the private attorney general doctrine is "also known as the 'substantial benefits doctrine.'" *Id.* at 608–09. In fact, they represent separate and distinct bases for the award of attorney fees. *See Arizona Attorneys' Fees Manual* § 6.4.6 (Bruce E. Meyerson & Patricia K. Norris eds., 6th ed. 2017).

compensation from any recovery. Under those circumstances, class actions would not be eligible for fees under the private attorney general doctrine. Here, by contrast, the class seeks declaratory and injunctive relief, not damages. As Medicaid recipients, the patients are highly unlikely to have the means to hire private attorneys, and private attorneys are unlikely to take on such complex litigation without some prospect of remuneration. Given the purpose of the private attorney general doctrine to promote vindication of important public rights, *see id.*, fees are appropriate here.

**¶41** As this case involves a challenge to state statutes, private enforcement is necessary. *See, e.g., Ariz. Ctr. for Law in the Pub. Interest v. Hassell*, 172 Ariz. 356, 371 (App. 1991).

**¶42** Finally, the enforcement of federal Medicaid provisions, particularly the full measure of benefits, is unquestionably of great societal importance.

**¶43** The hospitals make two arguments as to why the private attorney general doctrine should not apply. First, the right vindicated here is under federal law, and federal courts do not recognize the private attorney general doctrine. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 264–68 (1975). But *Alyeska* was based on a lack of statutory authority for federal courts to award fees in that case, *id.* at 247, whereas this Court has recognized the private attorney general doctrine in cases that satisfy the *Arnold* criteria, as this case does. Second, the hospitals argue that the private attorney general doctrine should apply only against the state, not private parties. Although ordinarily the doctrine applies to state actors and not private parties, our courts have applied it to private parties in limited circumstances. *See Defenders of Wildlife v. Hull*, 199 Ariz. 411, 428 (2001) (awarding fees against private intervenor); *Hassell*, 172 Ariz. at 371 (finding fee award against private defendant appropriate where defendant sought to promote his own interests). The private attorney general doctrine applies because the hospitals here invoked and defended the lien statutes that thwart the patients' rights. Thus, the trial court did not abuse its discretion by ruling that the hospitals should bear the costs of the patients' successful challenge.

**¶44** For those reasons, we conclude that the trial court did not abuse its discretion by awarding fees to the patients under the private

attorney general doctrine, and we exercise our discretion to award attorney fees the patients incurred in this Court on that same basis. Although the court of appeals ordered attorney fees under a different, unsustainable basis, we affirm those fees under the private attorney general doctrine.

## DISPOSITION

¶45 We vacate the court of appeals' opinion and affirm the trial court's judgment enjoining the application of the lien statutes to allow the hospitals to recover the costs of medical care for the patients beyond the amounts provided by Medicaid.