NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

FHMC, LLC et al.,
*Plaintiffs/Appellants*,

*v.*

BLUE CROSS AND BLUE SHIELD OF ARIZONA, INC,
*Defendant/Appellee.*

No. 1 CA-CV 25-0735

FILED 06-22-2026

Appeal from the Superior Court in Maricopa County
No. CV2024-021225
The Honorable Dewain D. Fox, Judge

**AFFIRMED**

COUNSEL

Fountain Hills Medical Center, Fountain Hills
By Grover C. Peters
*Counsel for Plaintiff/Appellant*

Papetti Samuels Weiss McKirgan LLP, Scottsdale
By Randall S. Papetti, Lauren Ann Crawford
*Counsel for Defendant/Appellee*

## MEMORANDUM DECISION

Presiding Judge Michael S. Catlett delivered the decision of the Court, in which Judge Angela K. Paton and Judge Jennifer M. Perkins joined.

C A T L E T T, Judge:

¶1        This appeal involves a dispute between an out-of-network health care provider and an insurer of health care plans and policies about reimbursement for emergency care services.  The health care providers, FHMC, LLC and FHMC Clinic, LLC (together "FHMC"), appeal the superior court's judgment dismissing their complaint for failing to state a claim against the insurer, Blue Cross and Blue Shield of Arizona, Inc. ("Blue Cross").  Because the superior court correctly entered judgment dismissing FHMC's claims, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        On appeal from a dismissal for failure to state a claim, we presume the well-pleaded factual allegations are true and "indulge all reasonable inferences from those facts, but mere conclusory statements are insufficient."  *Coleman v. City of Mesa*, 230 Ariz. 352, 356 ¶ 9 (2012).

¶3        Blue Cross insures health care plans and policies.  FHMC provides health care through a medical clinic and emergency care facility in Fountain Hills, Arizona.  FHMC is an out-of-network ("OON") provider because it has no contract with Blue Cross setting reimbursement rates or otherwise governing payment for services provided to patients with Blue Cross insurance plans ("the insureds").  During all relevant times, FHMC provided emergency care services to the insureds as an OON provider.

¶4        In return for treatment, FHMC required all patients, including the insureds, to execute several forms regarding payment.  In one form, the insureds confirmed they are "financially responsible" for services rendered.  The same form states that if the insureds receive a reimbursement check from Blue Cross for such services, the funds are "legally due to" FHMC.

¶5        Another form, the "Conditions of Admission and Consent to Medical Treatment," includes an "Assignment of Insurance Benefits/Promise to Pay" ("Assignment") authorizing Blue Cross to pay

FHMC directly and purporting to assign certain insurance rights and benefits to FHMC. The Assignment provides:

> I ASSIGN TO [FHMC] all of my rights and benefits under existing policies of insurance providing coverage and payment for any expenses incurred as a result of services and treatment rendered by [FHMC]. I authorize direct payment to [FHMC] of any insurance benefits otherwise payable to or on behalf of myself.

The insureds also granted FHMC "power of attorney . . . expressly limited to those [powers] reasonably required to collect any payments or benefits[.]"

**¶6** Pursuant to these forms, FHMC submitted claims to Blue Cross for reimbursement for emergency care services. For some time, Blue Cross sent reimbursements directly to FHMC for an unknown number of claims. But for seventy-one claims, Blue Cross instead sent reimbursement checks directly to the insureds, totaling an estimated $467,084.70 ("Pre-NSA Claims"). FHMC has unsuccessfully tried to collect from these insureds.

**¶7** After the federal No Surprises Act ("NSA") became effective in January 2022, FHMC alleges Blue Cross "dramatically decreased" its reimbursement rates for emergency care services. *See* 42 U.S.C. § 300gg-111 et seq., Pub. L. No. 116-260, 134 Stat. 2758 (2020). According to FHMC, Blue Cross violated the NSA by: (1) failing to timely process claims; (2) issuing insufficient initial payments and denials without explanation; (3) refusing to participate in open negotiations or agree on appropriate reimbursement amounts; (4) submitting improper calculations for arbitration; and (5) failing to pay or underpaying awards ("Post-NSA Claims"). As a result, FHMC contends Blue Cross withheld "millions of dollars[.]"

**¶8** FHMC sued Blue Cross under the NSA in federal district court, but that court dismissed the action for failure to state a claim. FHMC then sued Blue Cross in superior court, asserting eleven claims under Arizona law.

**¶9** Blue Cross moved to dismiss FHMC's complaint for failing to state a claim. After briefing and argument, the superior court dismissed FHMC's complaint in full. As to the Pre-NSA Claims, the court concluded that because FHMC was an OON provider, Blue Cross was not contractually obligated to send reimbursements directly to FHMC. The court also reasoned that the insureds could not pursue the Pre-NSA Claims against Blue Cross, so FHMC also could not.

¶10        The court dismissed the Post-NSA Claims based on conflict preemption, concluding FHMC's state-law claims "st[ood] as an obstacle to the accomplishment and execution" of the NSA.  Because the court dismissed the Post-NSA Claims on preemption grounds, it did not consider Blue Cross's alternative arguments that FHMC's claims fail under state law.

¶11        FHMC timely appealed.  We have jurisdiction.  A.R.S. §§ 12-2101(A)(1), 12-120.21(A)(1).

## DISCUSSION

¶12        For the most part, the superior court concluded that the NSA preempts FHMC's state law claims.  So in large part, the court did not decide whether FHMC stated any valid claim under state law.  And on appeal, the parties focus their arguments on federal preemption.

¶13        "[P]ursuant to the Supremacy Clause, U.S. Const. art. VI, cl. 2, when a state law clearly conflicts with federal. . . law, the state law must yield[.]"  *In re Marriage of Quijada and Dominguez*, 257 Ariz. 432, 437 ¶ 20 (2024).  "We presume that federal lawmakers do not 'cavalierly preempt' state law because 'the States are independent sovereigns in our federal system,' and have historically 'had great latitude' to protect 'the lives, limbs, health, comfort, and quiet' of their citizens."  *Varela v. FCA US LLC*, 252 Ariz. 451, 459 ¶ 13 (2022) (citations omitted).  Our supreme court has cautioned against concluding that "state law is preempted not by what is expressed in federal law, but rather by what may be implied by federal law."  *Id.* at 460 ¶¶ 15–16.  "[I]n our system of federalism, we do not start with federal law and apply it unless the legislature manifests a contrary intent; rather, we presume that state law prevails[.]"  *Roberts v. State*, 253 Ariz. 259, 266 ¶ 21 (2022).

¶14        What does this mean here?  It means we conduct our analysis in a different order than the superior court.  We start with the question whether FHMC stated any valid claim under state law.  Only if FHMC did so, do we analyze whether any valid claim is preempted under federal law.  This approach is consistent with how Arizona courts proceed when a defendant argues federal preemption and failure to state a claim under state law.  It also jives with federalism and avoiding constitutional issues when possible.  *See Conklin v. Medtronic, Inc.*, 245 Ariz. 501, 506 ¶ 22 (2018) (analyzing first if the plaintiff had a claim under Arizona law before deciding preemption); *Abbott v. Banner Health Network*, 239 Ariz. 409, 412–13 ¶ 10 (2016) (criticizing this court for finding federal preemption because "[d]eciding whether the Arizona hospital lien statutes are preempted is

unnecessary in determining whether the trial court properly considered and granted Petitioners' motion to dismiss"); *Ansley v. Banner Health Network*, 248 Ariz. 143, 147 ¶ 9 (2020) (recognizing that federal preemption and the existence of a cause of action "overlap but are analytically distinct"); *see also R.L. Augustine Constr. Co., Inc. v. Peoria Unified Sch. Dist. No. 11*, 188 Ariz. 368, 370 (1997) (declining to reach the constitutional question because issues could be "fairly decided on nonconstitutional grounds") (collecting cases).

## I.      Failure to State a Claim

**¶15**        We review de novo a judgment dismissing a complaint under Arizona Rule of Civil Procedure 12(b)(6). *CVS Pharmacy, Inc. v. Bostwick*, 251 Ariz. 511, 516 ¶ 10 (2021). Dismissal is appropriate if FHMC "would not be entitled to relief under any interpretation of the facts susceptible of proof" as a matter of law. *Coleman*, 230 Ariz. at 356 ¶ 8 (cleaned up*)*.

**¶16**        As it did in the superior court, Blue Cross argues on appeal that FHMC's complaint failed to state a claim for relief. Again, the superior court did not address most of Blue Cross's state law arguments, hinging dismissal primarily on federal preemption. But because Blue Cross raised state law arguments below and with us, they are independent grounds for affirming the judgment. *See* Ariz. R. Civ. App. P. 13(b)(2) (this court may consider "any issue [discussed in the answering brief] that was properly presented in the superior court without the need for a cross-appeal, and [we] may affirm the judgment based on any such grounds"); *Fappani v. Bratton*, 243 Ariz. 306, 309 ¶ 8 (App. 2017) ("[W]e will affirm the court's order dismissing a complaint if it is correct for any reason.").

**¶17**        In its reply brief on appeal, FHMC ignores Blue Cross's state law arguments. We could consider that a concession that it failed to state a claim for relief under Arizona law. *See Castillo v. Lazo*, 241 Ariz. 295, 298 ¶ 9 (App. 2016) (this court could consider the failure to respond to an argument to be "a concession of the issue"). When a party fails to respond to an opposing party's argument and debatable issues exist, "we may consider such failure a confession" on the issue. *Savord v. Morton*, 235 Ariz. 256, 259 ¶ 9 (App. 2014). A debatable issue is a matter that takes "independent research to refute" or creates "grave doubt" about the legal issue we decide *Merrill v. Wheeler*, 17 Ariz. 348, 350 (1915); *Adkins v. Adkins*, 39 Ariz. 530, 532 (1932). We therefore review Blue Cross's arguments and the record to determine if it is debatable whether FHMC stated a valid claim for relief. *See Stover v. Kesmar*, 84 Ariz. 387, 388 (1958). We conclude it is not debatable, so we address those claims on their merits.

### A.    Count 1: Breach of Contract

**¶18**        To state a claim for breach of contract, FHMC had to allege it had a contract with Blue Cross, Blue Cross breached the contract, and FHMC suffered damages. *See Thomas v. Montelucia Villas, LLC*, 232 Ariz. 92, 96 ¶ 16 (2013).  FHMC concedes that during all relevant times it was an OON provider, meaning it had no contract with Blue Cross.  Instead, FHMC alleged that the Assignments constitute an enforceable contract between Blue Cross and FHMC.

**¶19**        The key issue is whether the insureds have a breach of contract claim against Blue Cross that FHMC can now assert as assignee. They do not.

**¶20**        "The assignee's rights are derivative of the insured's[.]" *Republic Ins. Co. v. Feidler*, 178 Ariz. 528, 534 (App. 1993).  A valid assignment allows the assignee to "'stand[ ] in the shoes' of the assignor, taking [assignor's] rights and remedies" subject to any defenses the insurer has "against the assignor prior to notice of the assignment." *Farmers Ins. Exch. v. Udall*, 245 Ariz. 19, 23 ¶ 13 (App. 2018).  Therefore, the assignee may assert only those claims possessed by the insured-assignors and nothing more. *Id.* at 24 ¶ 16.

**¶21**        In its complaint, FHMC alleged Blue Cross breached its contracts with the insureds by failing "to make full payment for reasonable services rendered by FHMC in the manner and amounts required under the terms of each insured's [p]lans."  This conclusory allegation does not state a claim for relief. *See Coleman*, 230 Ariz. at 356 ¶ 9 ("mere conclusory statements are insufficient").  Nowhere in the complaint does FHMC describe the terms of the insured's plans that Blue Cross is alleged to have breached.  And FHMC cannot state an assigned claim for breach of contract without sufficiently alleging that Blue Cross breached a contract with the insureds.

**¶22**        FHMC argues that, by disregarding the Assignments, Blue Cross is subject to "double liability[.]"  That is, despite Blue Cross already paying the insureds, it is contractually obligated via the Assignments to again reimburse FHMC.  But FHMC does not have a derivative claim for missed payments when the insureds—FHMC's assignors—could not have brought such a claim.

**¶23**        Still, FHMC reasons that by virtue of the Assignments, the amounts Blue Cross paid to the insureds and any amounts still due are owed to FHMC.  FHMC concedes that Blue Cross reimbursed the insureds

directly for emergency care services. Still, FHMC asserts the Assignments transferred the insureds' "contractual rights" and "legal right to payment" under their insurance plans. FHMC reasons that, upon notice, the Assignments imposed an enforceable contractual obligation on Blue Cross, a non-party, to honor the Assignment by reimbursing FHMC.

**¶24**  The precedent FHMC relies on for its "contractual rights" theory is inapposite. Each case FHMC cites involved an action to enforce an assignment of contractual rights, not an assignment of claims under an insurance policy. *See Van Waters & Rogers, Inc. v. Interchange Res., Inc.*, 14 Ariz.App. 414, 419 (1971) (assignee of proceeds of a construction contract); *Indep. Nat. Bank v. Westmoor Elec., Inc.*, 164 Ariz. 567, 569–70 (App. 1990) (wrongful payment action based on assignment of construction contract); *Bank of Yuma v. Arrow Constr. Co.*, 106 Ariz. 582, 583 (1971) (assignment of right to payments due under construction contract).

**¶25**  Those opinions do not help FHMC because the general rule is that an indemnity insurance policy, like a health insurance policy, "cannot be assigned, especially where an assignment is expressly prohibited by the terms of the policy, unless the insurer consents." *Aetna Cas. & Sur. Co. v. Valley Nat'l Bank of Ariz.*, 15 Ariz.App. 13, 15 (1971). This principle "is based upon the right of the insurer to choose its insured so as to know its risks." *Id.* However, "[a]fter a loss has occurred and the rights under the [plan] have accrued," an assignment is "not of the [plan] itself, but of a claim under, or a right of action on, the [plan]." *St. Paul Fire & Marine Ins. Co. v. Allstate Ins. Co.*, 25 Ariz.App. 309, 311 (1975) (citation omitted).

**¶26**  That Blue Cross may have had notice of the Assignments is irrelevant. FHMC did not allege that the insured's policies permitted them to assign their contractual rights to third parties or that Blue Cross consented to the insureds assigning their contractual rights to FHMC. At oral argument, FHMC conceded that it has not alleged that Blue Cross consented to the Assignments.

**¶27**  At bottom, FHMC confuses assignment of a contractual right with a post-loss assignment of a claim under an insurance plan. *See Pointe 16 Cmty. Ass'n v. GTIS-HOV Pointe 16, LLC*, 260 Ariz. 377, __ ¶ 25 (2025) ("An assignment of rights under a contract is different than an assignment of accrued claims for damages arising from a breach of that contract."). Based on the allegations in the complaint (or lack thereof), the insureds could only assign a post-loss claim.

**¶28**      Therefore, as to FHMC's Pre-NSA Claims, there is no contractual relationship between Blue Cross and FHMC, so Blue Cross had no obligation to pay FHMC directly.  The Assignments did not create a contractual relationship imposing any payment obligation between the two.  And because Blue Cross reimbursed the insureds, there is no breach of contract claim for FHMC to pursue via the Assignments.

**¶29**      As to FHMC's Post-NSA Claims, FHMC does not assert a right to sue to collect insurance benefits under the insureds' plans.  *See Udall*, 245 Ariz. at 20 ¶ 1 (assignees validly assigned "their rights to sue to collect post-loss benefits under the policies" to the assignees).  Rather, FHMC urges that Blue Cross violated the NSA, which breached the insureds' plans.  This suffers from the same flaw as the Pre-NSA Claims.  To the extent FHMC seeks reimbursement premised on Blue Cross violating the NSA, that is not a claim the insureds can assert.  To the contrary, the NSA shields insureds from the OON costs that are the subject of FHMC's complaint; in other words, the outcome of any billing dispute between FHMC and Blue Cross under the NSA cannot impact the insureds in any cognizable way.  *See* 42 U.S.C. § 300gg-111(a)(1)(C)(iv)(II).  So FHMC's Post-NSA Claims for breach of contract also fail to state a claim.

### B.      Counts 2 and 8: Good Faith and Fair Dealing and Tortious Bad Faith

**¶30**      A covenant of good faith and fair dealing is implied in every Arizona contract, meaning "neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Rawlings v. Apodaca*, 151 Ariz. 149, 153 (1986).  "While every contract contains implied covenants of good faith and fair dealing, such covenants presume the existence of a valid contract." *Norman v. State Farm Mut. Auto. Ins. Co.*, 201 Ariz. 196, 203 ¶ 25 (App. 2001).  Because it is undisputed that there is no contract between FHMC and Blue Cross, FHMC fails to state a claim for relief.  To the extent FHMC brings this claim based on the Assignments, as discussed *supra* ¶¶ 21–28, this claim fails.

**¶31**      FHMC also asserted a claim for tortious bad faith.  A "bad faith claim is an intentional tort which arises out of contractual relationships." *Wagner v. Arizona Mun. Risk Retention Pool*, __ Ariz. __, ___, 585 P.3d 816, 822 ¶ 21 (App. 2026).  A bad-faith tort claim may exist when there is a "special relationship arising from elements of public interest, adhesion, and fiduciary responsibility." *Enyart v. Transamerica Ins. Co.*, 195 Ariz. 71, 76 ¶ 14 (App. 1998) (citation omitted).

¶32　　　　Again, there is no contractual relationship between FHMC and Blue Cross, so this claim fails. We also agree with Blue Cross that the relationship between an OON medical provider and a health care insurer does not impose on the insurer a duty in tort. FHMC provides no legal authority supporting the existence of a special relationship between Blue Cross and FHMC, and we have found none.

### C.　　Count 3: Promissory Estoppel

¶33　　　　To state a claim for promissory estoppel, FHMC had to allege that Blue Cross made a promise to FHMC that Blue Cross "should have reasonably foreseen" FHMC would rely on, that FHMC relied on that promise, and that FHMC suffered damages. *See Double AA Builders, Ltd. v. Grand State Const. L.L.C.*, 210 Ariz. 503, 507 ¶ 19 (App. 2005). Lastly, the court may make the promise "binding if injustice can be avoided only by enforcement of the promise." *Id.* (quoting Restatement (Second) of Contracts § 90(1)).

¶34　　　　FHMC alleged Blue Cross promised the emergency care costs and fees were covered under the insureds' plans, and it reasonably and detrimentally relied on such promises by providing emergency care services to the insureds. FHMC asserted it is entitled to "full and complete payment[.]" Blue Cross argues these alleged promises are not sufficiently definite. We agree.

¶35　　　　Even accepting FHMC's factual allegations as true, at most Blue Cross "promised" the insureds that their plans would cover service costs and fees, but not at a specific rate. These allegations do not establish that Blue Cross promised FHMC, directly or indirectly, that it would pay FHMC at a particular rate if FHMC provided the insureds with treatment. FHMC's complaint fails to state a claim for promissory estoppel.

### D.　　Counts 4 and 5: Prompt Pay Statute

¶36　　　　Arizona's Prompt Pay Statute (A.R.S. § 20-3102) generally requires health care insurers, such as Blue Cross, to "adjudicate any clean claim from [an OON] health care provider relating to health care insurance coverage within thirty days[.]" A.R.S. § 20-3102(A). FHMC alleged that Blue Cross violated this statute, so Blue Cross is liable for late payments and interest. *See* A.R.S. §§ 20-3102, 20-462. But FHMC concedes the Prompt Pay Statute did not create a private right of action. FHMC thus fails to state a claim for liability or interest under the Prompt Pay Statute.

### E.     Counts 6 and 7: Quantum Meruit and Unjust Enrichment

**¶37**         FHMC pressed separate claims for quantum meruit and unjust enrichment.  Although unjust enrichment is a valid cause of action, "[q]uantum meruit is actually a measure of damages." *Landi v. Arkules*, 172 Ariz. 126, 135 (App. 1992).  FHMC must, therefore, successfully plead unjust enrichment to recover quantum meruit damages. *See W. Corr. Grp., Inc. v. Tierney*, 208 Ariz. 583, 590 ¶ 28 (App. 2004).  So we ask only whether FHMC pleaded a valid claim for unjust enrichment.

**¶38**         Unjust enrichment is an equitable remedy when there is no "specific contract" between the parties. *Brooks v. Valley Nat. Bank*, 113 Ariz. 169, 174 (1976).  To plead an unjust enrichment claim, FHMC had to allege "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *See Freeman v. Sorchych*, 226 Ariz. 242, 251 ¶ 27 (App. 2011).  There is no unjust enrichment if "the defendant has not retained a benefit." *See Span v. Maricopa Cnty. Treasurer*, 246 Ariz. 222, 227 ¶ 16 (App. 2019).

**¶39**         FHMC alleged the enrichment it conferred on Blue Cross was (1) emergency care services to insureds and (2) the discharge of Blue Cross's obligations to the insureds.  Blue Cross argued these are not legally cognizable benefits.  FHMC provided no contrary authority.

**¶40**         For unjust enrichment to exist, a plaintiff must have undertaken an endeavor to its detriment "solely to benefit" the defendant. *Sorchych*, 226 Ariz. at 252 ¶ 28.  The plaintiff cannot recover when the benefit to the defendant is simply a by-product of the plaintiff's efforts it would have expended regardless. *Id.*  Similarly, merely receiving a benefit is insufficient. *Murdock-Bryant Const., Inc. v. Pearson*, 146 Ariz. 48, 54 (1985).

**¶41**         Even if Blue Cross received some benefit because FHMC provided emergency medical services to the insureds, FHMC's services directly benefited its patients (the insureds), not Blue Cross.  FHMC concedes federal law requires it to provide emergency care services, regardless of the patient's "insurance status or ability to pay." *See* 42 U.S.C. § 1395dd**.** So any benefit FHMC conferred on Blue Cross was derivative of or tangential to the (sometimes mandatory) medical care FHMC provided to the insureds.  FHMC could not state a derivative claim for unjust enrichment against Blue Cross.

### F.    Count 9: Misrepresentations and False Disclosures

**¶42**        A private right of action exists under A.R.S. § 20–443 when one "[m]isrepresent[s] the terms of any policy . . . or the benefits or advantages promised[.]"  A.R.S. § 20–443(A)(1); *Haisch v. Allstate Ins. Co.,* 197 Ariz. 606, 610 ¶ 13 (App. 2000).  A "misrepresentation" must concern the "'terms' of a policy, its 'benefits' or 'advantages,' or its 'true nature.'" *Id.* at 610–11 ¶ 16 (quoting A.R.S. §§ 20-443(A)(1), (4)).

**¶43**        FHMC alleged Blue Cross violated § 20-443 by sending reimbursement checks directly to insureds.  Blue Cross responded that it did not make a misrepresentation by mailing reimbursement checks.  We again agree with Blue Cross.  Blue Cross did not make any representation, let alone a misrepresentation, to FHMC by mailing checks to the insureds rather than FHMC.  FHMC did not allege that the insureds' policies prohibited Blue Cross from directly reimbursing them and it is far from clear how mailing a check constitutes a representation about an insurance policy's terms.  To the extent FHMC bases this claim on the Assignment, it still fails.  *See supra* ¶¶ 21–28.

### G.    Count 10: Consumer Fraud

**¶44**        The Consumer Fraud Act ("CFA") grants a private cause of action for deceptive or unfair acts or practices, misrepresentations, concealment, suppression or omissions of material fact made "in connection with the sale or advertisement of merchandise." *Dunlap v. Jimmy GMC of Tucson, Inc.,* 136 Ariz. 338, 342 (App. 1983); A.R.S. § 44-1522(A).  "To succeed on a claim of consumer fraud, a plaintiff must show a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and consequent and proximate injury resulting from the promise." *Kuehn v. Stanley*, 208 Ariz. 124, 129 ¶ 16 (App. 2004).

**¶45**        FHMC alleged that Blue Cross violated the CFA in the following ways: (1) by failing to explain billing and reimbursement process issues after the Insureds received care from FHMC; and (2) by making statements to FHMC about claims subject to the NSA.  In neither situation is the CFA applicable.  In neither situation is Blue Cross alleged to have made representations "in connection with the sale or advertisement of [ ] merchandise."  A.R.S. § 44-1522(A).  In the first situation, the alleged omission occurred after the insureds purchased policies from Blue Cross. In the second, the statements occurred during the claim adjudication process, after the insureds purchased their policies and obtained services

(i.e., indemnity) from Blue Cross. *Accord Physicians Surgery Ctr. of Chandler v. Cigna Healthcare Inc.*, 609 F. Supp. 3d 930, 939-41 (D. Ariz. 2022) (dismissing healthcare provider's claim premised on pre-approval by insurer and subsequent refusal to pay because prior approval is "unconnected 'with the sale or advertisement of [ ] *merchandise*.'") (emphasis in original) (omitted word in original).

¶46　　　　The purpose of the CFA is to "provide injured consumers with a remedy to counteract the disproportionate bargaining power often present in consumer transactions." *Waste Mfg. & Leasing Corp. v. Hambicki*, 183 Ariz. 84, 88 (App. 1995). Because FHMC's allegations do not touch on the bargaining process in a consumer transaction, the complaint does not state a claim under the CFA.

## H.　　Count 11: Tortious Interference

¶47　　　　Tortious interference requires: (1) a valid contract or business expectancy; (2) the interferer's knowledge of the business contract or expectancy; (3) intentional interference causing a breach of the contract or business expectancy; and (4) damages. *Neonatology Assocs., LTD. v. Phoenix Perinatal Assocs., Inc.*, 216 Ariz. 185, 187 ¶ 7 (App. 2007). Moreover, the interference must be "improper as to motive or means," and not merely "the act of interference." *Id.* at 187–88 ¶ 8. Although "the issue of motive . . . is one of fact and not law," the court "may resolve the issue as a matter of law when there is no reasonable inference to the contrary in the record." *See id.* at 188 ¶ 9.

¶48　　　　FHMC alleged Blue Cross interfered with a contract by mailing reimbursement checks directly to the insureds, requiring FHMC to collect funds from the insureds, some of whom failed to remit payment. Again, Blue Cross had no duty to reimburse FHMC directly (*see supra* ¶¶ 21–28) and fulfilled its obligations under the insureds' plans by reimbursing them. That some insureds refused to remit reimbursement to FHMC does not show that Blue Cross intentionally interfered with contracts between FHMC and the insureds. Nor does it make Blue Cross's conduct improper or intentional. That FHMC had to later attempt to collect payment from some of the insureds does not establish that Blue Cross engaged in improper or intentional interference. *See Bar J Bar Cattle Co., Inc. v. Pace*, 158 Ariz. 481, 483–84 (App. 1988). This claim also fails as a matter of law.

## II.      FHMC's Violation of Arizona Rules of Civil Appellate Procedure

¶49      When reviewing FHMC's Opening and Reply briefs, we found defective legal citations, including fabricated reporter and pin citations and unsupported propositions to bolster arguments.

¶50      FHMC cites A.R.S. § 20-3102 and the Arizona Department of Insurance and Financial Institutions Regulatory Bulletin 2025-01 for the proposition that they impose a 15-day requirement for insurers to acknowledge claims.   Neither of these authorities impose such a requirement, but FHMC repeatedly represented that such a requirement exists when arguing that Arizona law does not conflict with the NSA.

¶51      In another instance, FHMC cites *Coleman v. City of Mesa*, 230 Ariz. 352 (2012), for the proposition that "[w]hen a trial court dismisses all claims on a single threshold ground, appellants need not brief every claim's merits to preserve them."   *Coleman* neither mentions nor supports this proposition.

¶52      We also identified the following case citations where the LexisNexis reporter citation (which we bold for emphasis) does not exist:

- *Mod. Orthopaedics of NJ. v. Premera Blue Cross*, No. 2:25-cv-01087 (BRM) (JSA), **2025 LX 425206** (D.N.J. Nov. 3, 2025);
- *Mod. Orthopaedics of Nj. v. Premera Blue Cross*, No. 2:25-cv-01087 (BRM) (JSA), **2025 U.S. Dist. LEXIS 215824** (D.N.J. Nov. 3, 2025);
- *Kennedy v. UnitedHealth Grp. Inc.*, **2025 U.S. Dist. LEXIS 117870** (S.D.N.Y. June 20, 2025);
- *FHMC LLC v. Blue Cross & Blue Shield of Ariz. Inc.*, No. CV-23-00876-PHX-GMS, **2024 U.S. Dist. LEXIS 62018** (D. Ariz. Apr. 3, 2024) (the federal district court's order in this litigation); and
- *Arnal v. Travelers Prop. Cas. Ins. Co.*, **2007 U.S. Dist. LEXIS 112974** (D. Ariz. Jan. 19, 2007).

¶53      Arizona Rule of Civil Appellate Procedure 13(a)(7) requires that arguments contain citations to legal authority.   The integrity of the appellate process depends on accurate and honest advocacy.   Counsel has an ethical duty of candor to this court and to certify that representations and citations made to this court are accurate.   Ariz. R. Sup. Ct. 42, ER 3.3; Ariz. R. Civ. P. 11(a), (b); *see also Mangan v. Mangan*, 227 Ariz. 346, 353–54 ¶¶ 29–32 (App. 2011) (sanctioning counsel for misrepresenting the record and relying on inappropriate legal authorities); *In re Matter of Washburn v. Houston*, 2026 WL 16825, at *4 ¶ 31(Ariz. App. Jan. 2, 2026) (mem. decision)

(reporting appellant to state bar where brief contained incorrect and misleading citations to bolster arguments). We forward this decision to the State Bar of Arizona to review whether counsel violated any rule of professional conduct.

## ATTORNEY FEES AND COSTS

**¶54** Pursuant to A.R.S. § 12-341.01, Blue Cross requests its attorney fees on appeal for defending against FHMC's claims for breach of contract, breach of the implied covenant, and tortious interference because those claims arise out of contract. Blue Cross also seeks its costs on appeal pursuant to Arizona Rules of Civil Appellate Procedure 21(a).

**¶55** We grant Blue Cross's request for reasonable attorney fees on appeal with respect to any of FHMC's claims arising out of contract. *See* A.R.S. § 12-341.01. We also grant Blue Cross its costs on appeal. *See* A.R.S. § 12-341. These fee and cost awards are subject to Blue Cross complying with Arizona Rule of Civil Appellate Procedure 21(a).

## CONCLUSION

**¶56** Because FHMC's complaint did not state a valid claim for relief under state law, we need not address federal preemption. We affirm the superior court's judgment dismissing FHMC's claims.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:            JR

14